AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☐ SUPERSEDING

---OFFENSE CHARGED---

See Attachment

E-filing

☐ Petty
☐ Minor
☐ Misde-
    meanor
☒ Felony

PENALTY:

See Attachment

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

---DEFENDANT - U.S---

BECKY CHRISTIAN

DISTRICT COURT NUMBER

**CR 08 0237 JSW**

---PROCEEDING---

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court,
   give name of court

☐ this person/proceeding is transferred from another district
   per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of
   charges previously dismissed
   which were dismissed on motion
   of:
   ☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW
DOCKET NO.

☐ this prosecution relates to a
   pending case involving this same
   defendant

MAGISTRATE
CASE NO.

☐ prior proceedings or appearance(s)
   before U.S. Magistrate regarding this
   defendant were recorded under

Name and Office of Person
Furnishing Information on this form  Brian J. Stretch, Acting US Att'y

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)  Kyle F. Waldinger

---DEFENDANT---

IS *NOT* IN CUSTODY
    Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
       summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction                    ☐ Federal  ☐ State

6) ☐ Awaiting trial on other charges
       If answer to (6) is "Yes", show name of institution

Has detainer  ☐ Yes      If "Yes"
been filed?   ☐ No        give date
                          filed

DATE OF         Month/Day/Year
ARREST

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED      Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

---ADDITIONAL INFORMATION OR COMMENTS---

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT      Bail Amount:

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Date/Time:                    Before Judge:

Comments:

**Attachment to Penalty Sheet**
**United States v. David Nosal and Becky Christian**

**Offenses Charged**

| | |
|---|---|
| Count One: | 18 U.S.C. §§ 1832(a)(5) & 371 – Conspiracy to Misappropriate, Receive, Possess, and Transmit Trade Secrets, Gain Unauthorized Access to a Protected Computer, Exceed Authorized Access to a Protected Computer, and Traffic in a Password Allowing Unauthorized Access to a Protected Computer |
| Counts Two through Seven: | 18 U.S.C. §§ 1030(a)(4) & 1030(c)(3)(A) – Unauthorized Access to a Protected Computer with Intent to Defraud and Obtaining Something of Value |
| Count Eight: | 18 U.S.C. §§ 1832(a)(1), 1832(a)(2) & 1832(a)(4) – Theft, Misappropriation, and Unauthorized Downloading of Trade Secrets |
| Counts Nine and Ten: | 18 U.S.C. §§ 1832(a)(3) & 1832(a)(4) – Unauthorized Receipt and Possession of Stolen Trade Secrets |
| Counts Eleven through Eighteen: | 18 U.S.C. § 1341 — Mail Fraud |
| Count Nineteen: | 18 U.S.C. § 1349 — Conspiracy to Commit Mail Fraud |

**Penalties**

| | |
|---|---|
| Count One: | 10 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
| Counts Two through Seven: | 5 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
| Count Eight: | 10 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
| Counts Nine and Ten: | 10 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |

Counts Eleven
through Eighteen:    20 years' imprisonment, $250,000 fine or twice the gross gain or gross
loss, 3 years of supervised release, $100 special assessment

Count Nineteen:    20 years' imprisonment, $250,000 fine or twice the gross gain or gross
loss, 3 years of supervised release, $100 special assessment

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

─── OFFENSE CHARGED ───

See Attachment

E-filing

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:

See Attachment

─── PROCEEDING ───

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE
SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form  Brian J. Stretch, Acting US Att'y
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)  Kyle F. Waldinger

Name of District Court, And/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA

─── DEFENDANT - U.S ───

▶ DAVID NOSAL

DISTRICT COURT NUMBER

JSW

─── DEFENDANT ───

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge
5) ☐ On another conviction ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes  If "Yes"
been filed? ☐ No  give date filed
DATE OF ARREST  Month/Day/Year
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED
TO U.S. CUSTODY  Month/Day/Year

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT     Bail Amount:
If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:                     Before Judge:

Comments:

**Attachment to Penalty Sheet**
**United States v. David Nosal and Becky Christian**

**Offenses Charged**

| | |
|---|---|
| Count One: | 18 U.S.C. §§ 1832(a)(5) & 371 – Conspiracy to Misappropriate, Receive, Possess, and Transmit Trade Secrets, Gain Unauthorized Access to a Protected Computer, Exceed Authorized Access to a Protected Computer, and Traffic in a Password Allowing Unauthorized Access to a Protected Computer |
| Counts Two through Seven: | 18 U.S.C. §§ 1030(a)(4) & 1030(c)(3)(A) – Unauthorized Access to a Protected Computer with Intent to Defraud and Obtaining Something of Value |
| Count Eight: | 18 U.S.C. §§ 1832(a)(1), 1832(a)(2) & 1832(a)(4) – Theft, Misappropriation, and Unauthorized Downloading of Trade Secrets |
| Counts Nine and Ten: | 18 U.S.C. §§ 1832(a)(3) & 1832(a)(4) – Unauthorized Receipt and Possession of Stolen Trade Secrets |
| Counts Eleven through Eighteen: | 18 U.S.C. § 1341 — Mail Fraud |
| Count Nineteen: | 18 U.S.C. § 1349 — Conspiracy to Commit Mail Fraud |

**Penalties**

| | |
|---|---|
| Count One: | 10 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
| Counts Two through Seven: | 5 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
| Count Eight: | 10 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
| Counts Nine and Ten: | 10 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |

| Counts Eleven through Eighteen: | 20 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
|---|---|
| Count Nineteen: | 20 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |

# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

## VENUE: SAN FRANCISCO

### UNITED STATES OF AMERICA,

V.

### DAVID NOSAL and BECKY CHRISTIAN

DEFENDANT(S).

# INDICTMENT

VIOLATIONS: 18 U.S.C. §§ 1832(a)(5) & 371 – Conspiracy to Misappropriate, Receive, Possess, and Transmit Trade Secrets, Gain Unauthorized Access to a Protected Computer, Exceed Authorized Access to a Protected Computer, and Traffic in a Password Allowing Unauthorized Access to a Protected Computer; 18 U.S.C. §§ 1030(a)(4) & 1030(c)(3)(A) – Unauthorized Access to a Protected Computer with Intent to Defraud and Obtaining Something of Value; 18 U.S.C. §§ 1832(a)(1), 1832(a)(2) & 1832(a)(4) – Theft, Misappropriation, and Unauthorized Downloading of Trade Secrets; 18 U.S.C. §§ 1832(a)(3) & 1832(a)(4) – Unauthorized Receipt and Possession of Stolen Trade Secrets; 18 U.S.C. § 1341 – Mail Fraud; 18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud; 18 U.S.C. § 2 – Aiding and Abetting

INDICT

A true bill.

_____
                        Foreman

Filed in open court this ___16___ day of _APRIL 2008_

_____

_____
                        Clerk

Bail, $ __No Process__

1   BRIAN J. STRETCH (CSBN 163973)
    Acting United States Attorney

2

3

4                                    E-filing

5

6

7

8                         UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                          SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA,          )   No.
                                       )   CR 08       0237  JSW
12         Plaintiff,                  )   VIOLATIONS: 18 U.S.C. §§ 1832(b)(5) & 371 –
                                       )   Conspiracy to Misappropriate, Receive, Possess,
13         v.                          )   and Transmit Trade Secrets, Gain Unauthorized
                                       )   Access to a Protected Computer, Exceed
14                                     )   Authorized Access to a Protected Computer, and
    DAVID NOSAL and                    )   Traffic in a Password Allowing Unauthorized
15  BECKY CHRISTIAN,                   )   Access to a Protected Computer; 18 U.S.C.
                                       )   §§ 1030(a)(4) & 1030(c)(3)(A) – Unauthorized
16                                     )   Access to a Protected Computer with Intent to
           Defendants.                 )   Defraud and Obtaining Something of Value; 18
17                                     )   U.S.C. §§ 1832(a)(1), 1832(a)(2) & 1832(a)(4) –
                                       )   Theft, Misappropriation, and Unauthorized
18                                     )   Downloading of Trade Secrets; 18 U.S.C.
                                       )   §§ 1832(a)(3) & 1832(a)(4) – Unauthorized
19                                     )   Receipt and Possession of Stolen Trade Secrets;
                                       )   18 U.S.C. § 1341 – Mail Fraud; 18 U.S.C. § 1349
20                                     )   – Conspiracy to Commit Mail Fraud; 18 U.S.C.
                                       )   § 2 – Aiding and Abetting
21  _____)
                                       )   SAN FRANCISCO VENUE
22

23                              I N D I C T M E N T

24  The Grand Jury charges:

25                               BACKGROUND

26  At all times relevant to this Indictment:

27  Korn/Ferry International

28         1.     Korn/Ferry International ("Korn/Ferry") was an executive search firm

    INDICTMENT

1  headquartered in Los Angeles, California. Korn/Ferry also maintained a Silicon Valley office in
2  Redwood City, California, as well as a San Francisco office and other offices throughout the
3  United States and the world. Korn/Ferry was one of the leading providers of executive
4  recruitment services to businesses in the United States. As used herein, the terms "executive
5  search" and "executive recruitment" refer to searches to fill executive, board-of-director, and
6  similar high-level positions, as well as related and similar activities.

7  The Defendants

8      2.      The defendant David Nosal was employed by Korn/Ferry in its Silicon Valley
9  office and elsewhere from approximately April 1996 until approximately October 2004. During
10 his tenure at Korn/Ferry, Nosal held a number of high-level positions, including Regional
11 Managing Director and Office Managing Director. Nosal planned to start a competing executive
12 search firm after terminating his employment with Korn/Ferry. However, under the terms of a
13 Separation and General Release Agreement and an Independent Contractor Agreement (referred
14 to collectively hereafter as the "Nosal-Korn/Ferry Agreements") into which Nosal voluntarily
15 entered with Korn/Ferry, Nosal agreed to serve as an independent contractor to Korn/Ferry from
16 November 1, 2004 through October 15, 2005. Among other promises, Nosal agreed to cooperate
17 with Korn/Ferry on certain ongoing search assignments and agreed not to perform executive
18 search, executive placement, management assessment, or management audit services on behalf of
19 any other entity but Korn/Ferry during the period that the Nosal-Korn/Ferry Agreements were in
20 effect. In exchange, Korn/Ferry was to pay Nosal $25,000 per month during that period and was
21 to pay Nosal lump-sum payments on or before July 31, 2005 and on or before October 15, 2005.

22     3.      The defendant Becky Christian was employed by Korn/Ferry in its Silicon Valley
23 office and elsewhere from approximately September 1999 until approximately January 2005.
24 After she left Korn/Ferry, Christian set up an executive search firm known as Christian &
25 Associates LLC. In truth, however, Christian worked with the defendant Nosal in setting up
26 Nosal's executive search firm and either assisted, or was assisted by, Nosal in conducting
27 executive searches. In general, Christian retained 20% of the revenues from searches that she
28 conducted with Nosal and provided Nosal with the remaining 80%.

INDICTMENT                                    -2-

1  Other Individuals

2  4.      The individual identified herein as "J.F." was employed by Korn/Ferry from
3  approximately December 1997 to approximately August 2005. J.F. served as the defendant
4  Nosal's executive assistant prior to Nosal's departure from Korn/Ferry. After Nosal left
5  Korn/Ferry, J.F. continued to be employed by Korn/Ferry but assisted Nosal in setting up Nosal's
6  new executive search firm.

7  5.      The individual identified herein as "M.J." was employed by Korn/Ferry from
8  approximately January 2001 to approximately March 2005. After leaving Korn/Ferry, M.J.
9  worked with the defendant Nosal in setting up Nosal's executive search firm and either assisted,
10 or was assisted by, Nosal in conducting executive searches during approximately the spring and
11 summer of 2005. Nosal asked M.J. to establish a company in M.J.'s name, so that this company
12 — like Christian & Associates LLC — could be used as a vehicle for Nosal to continue to
13 conduct executive search activities until the expiration of the Nosal-Korn/Ferry Agreements.
14 Nosal proposed the same 80/20 split in revenues with M.J. that Nosal had adopted with the
15 defendant Christian.

16 The Searcher Database

17 6.      In performing their work, Korn/Ferry employees relied heavily on the "Searcher"
18 database, a highly confidential and proprietary database of executives and companies. This
19 database also contained information regarding search engagements that Korn/Ferry had
20 conducted for clients in the past. Using the "Custom Report" feature of the Searcher database,
21 Korn/Ferry employees quickly could sort through information in the database to create targeted
22 reports on executives, companies, and prior search engagements for use in candidate
23 development for clients and in client presentations.

24 7.      The information contained in the Searcher database regarding executives,
25 companies, and Korn/Ferry's prior search engagements was the product of the efforts of
26 hundreds of Korn/Ferry employees over many years. Korn/Ferry considered the Searcher
27 database to be one of the most comprehensive databases of executive candidates in the world.

28 8.      The information in the Searcher database regarding Korn/Ferry's prior search

INDICTMENT                          -3-

1  engagements included "source lists" (which were also referred to as "candidate lists"), generally

2  described as lists of candidates that Korn/Ferry presented to client companies with respect to

3  particular positions that those clients were trying to fill. Korn/Ferry considered these source lists

4  to be extremely valuable when initiating subsequent searches for executives for similar positions.

5  The Confidentiality of Information in the Searcher Database

6  9.  Korn/Ferry undertook considerable measures to maintain the confidentiality of the

7  information contained in the Searcher database. These measures included controlling electronic

8  access to the Searcher database and controlling physical access to the computer servers that

9  contained the database. Korn/Ferry employees received unique usernames and created passwords

10  for use on the company's computer systems, including for use in accessing the Searcher database.

11  These usernames and passwords were intended to be used by the Korn/Ferry employee only.

12  10.  Korn/Ferry required all of its employees — including the defendants David Nosal

13  and Becky Christian — to enter into agreements that both explained the proprietary nature of the

14  information disclosed or made available to Korn/Ferry employees (including the information

15  contained in the Searcher database) and restricted the use and disclosure of all such information,

16  except for legitimate Korn/Ferry business. Nosal executed such an agreement on or about April

17  26, 1996. Christian executed such an agreement on or about September 25, 1999.

18  11.  Among other additional measures, Korn/Ferry also declared the confidentiality of

19  information in the Searcher database by placing the phrase "Korn/Ferry Proprietary and

20  Confidential" on every Custom Report generated from the Searcher database. Further, when an

21  individual logged into the Korn/Ferry computer system, that computer system displayed the

22  following notification, in sum and substance:

23          This computer system and information it stores and processes are
            the property of Korn/Ferry. You need specific authority to access
24          any Korn/Ferry system or information and to do so without the
            relevant authority can lead to disciplinary action or criminal
25          prosecution. . . .

26  ///

27  ///

28  ///

INDICTMENT                           -4-

1  COUNT ONE:     18 U.S.C. §§ 1832(a)(5) & 371 — Conspiracy to Misappropriate, Receive,
                  Possess, and Transmit Trade Secrets, Gain Unauthorized Access to a
2                 Protected Computer, Exceed Authorized Access to a Protected Computer,
                  and Traffic in a Password Allowing Unauthorized Access to a Protected
3                 Computer

4        12.    The factual allegations in paragraphs 1 through 11 are re-alleged and incorporated

5  herein as if set forth in full.

6        13.    Beginning on a date unknown, and continuing to no later than August 2, 2005, in

7  the Northern District of California, and elsewhere, the defendants

8                              DAVID NOSAL and
                               BECKY CHRISTIAN
9

10  did knowingly and intentionally conspire and agree with each other and with other persons, to

11  commit the following offenses: misappropriation, receipt, possession, and transmission of trade

12  secrets, in violation of 18 U.S.C. §§ 1832(a)(1), (a)(2) and (a)(3); unauthorized access to a

13  protected computer, in violation of 18 U.S.C. § 1030(a)(4); exceeding authorized access to a

14  protected computer, in violation of 18 U.S.C. § 1030(a)(4); and trafficking in a password

15  allowing unauthorized access to a protected computer, in violation of 18 U.S.C. § 1030(a)(6)(A).

16                      MANNER AND MEANS OF THE CONSPIRACY

17       14.    It was part of the conspiracy that the defendants and co-conspirators would and

18  did knowingly, and with intent to defraud, obtain things of value from Korn/Ferry's computer

19  system, including source lists and other information.

20       15.    It was further part of the conspiracy that the defendants and co-conspirators would

21  and did steal, and without authorization knowingly take by fraud, artifice, and deception, trade

22  secrets from Korn/Ferry's computer system, including source lists.

23       16.    It was further part of the conspiracy that individual co-conspirators and others

24  would obtain these trade secrets and other things of value from Korn/Ferry's computer system

25  prior to and upon termination of their employment with Korn/Ferry by using their own

26  Korn/Ferry usernames and passwords, and did so without authorization and in excess of

27  authorized access.

28       17.    It was further part of the conspiracy that, after their separation from Korn/Ferry,

INDICTMENT                              -5-

1   the defendants and co-conspirators would obtain these trade secrets and other things of value
2   from Korn/Ferry's computer system by using, either directly or through J.F., J.F.'s Korn/Ferry
3   username and password, and did so without authorization and in excess of authorized access.

4       18.     It was further part of the conspiracy that the defendants and co-conspirators would
5   and did obtain things of value from Korn/Ferry's computer system; misappropriate Korn/Ferry
6   trade secrets; receive and possess stolen trade secrets; and transmit Korn/Ferry trade secrets to
7   each other, all for the purpose of retaining clients and placing candidates as part of their non-
8   Korn/Ferry executive search activities.

9                OVERT ACTS COMMITTED IN FURTHERANCE OF THE CONSPIRACY

10      19.     In furtherance of the conspiracy and to effect the objects thereof, the following
11  overt acts, among others, were committed in the Northern District of California, and elsewhere:
12  Receipt, Possession, Transmission, and Use of Chief Financial Officer Information from
    Korn/Ferry's Computer System
13

14      a.      On or about April 11, 2005, the defendant Christian sent an e-mail to J.F. stating
15  "It is to difficult to explain the searcher run I would need to log in as you."

16      b.      On or about April 12, 2005, the defendant Christian sent an e-mail to the
17  defendant Nosal attaching three Korn/Ferry source lists of chief financial officers ("CFOs").
18  These source lists originated from search engagements in which Korn/Ferry had been retained to
19  conduct searches for CFOs. Each source list was marked "Korn/Ferry Proprietary &
20  Confidential." Each source list had been downloaded from the Searcher database earlier in the
21  day on April 12, 2005, using J.F.'s Korn/Ferry username and password.

22      c.      On or about April 21, 2005, M.J. sent the defendants Nosal and Christian an e-
23  mail with the subject line "CFO Names/Ideas," which e-mail contained a list of six CFOs with
24  associated contact information. In the e-mail, M.J. stated that the individuals listed were from
25  "the [Company A] CFO search." This was a search engagement on which Nosal and M.J. had
26  worked while at Korn/Ferry. Nosal later responded to M.J.'s e-mail, saying "thank you."

27      d.      On or about April 25, 2005, Company B formally retained Christian & Associates
28  LLC to conduct a search for a CFO. Both the defendant Nosal and the defendant Christian

INDICTMENT                                      -6-

1  worked on and participated in this search.

2        e.      On or about June 1, 2005, the defendant Christian sent an e-mail to two
3  executives of Company B with the subject line "CFO Update." The defendant Nosal was copied
4  on this e-mail. This e-mail stated, in part, "We wanted to give you an update as it relates to the
5  CFO search," and then set out several possible candidates for the CFO position at Company B,
6  among them, three individuals who were listed on the source lists that Christian had sent to Nosal
7  on or about April 12, 2005.

8        f.      On or about July 12, 2005, using a computer at Nosal's new offices in San
9  Francisco, an individual remotely logged into Korn/Ferry's computer network using J.F.'s
10  Korn/Ferry username and password. Thereafter, among other activities, a co-conspirator ran
11  queries for information on two of the candidates for the Company B CFO position. In August
12  2005, Company B announced that it had hired one of those two candidates as its CFO.

13        g.      The defendant Christian also sent two other e-mails to the defendant Nosal on
14  April 12, 2005 containing lists of CFOs in the medical industry in relation to a search that Nosal
15  and Christian were performing for another company. Information in each of these e-mails was
16  "cut and pasted" from a source list in Korn/Ferry's Searcher database.

17  Use of Position Specifications from Korn/Ferry's Computer System

18        h.      On or about April 25, 2005, the defendant Nosal was retained by Company C to
19  conduct a search for a person to fill a senior vice president of human resources position. In an e-
20  mail dated April 25, 2005, the CEO of Company C informed Nosal that the CEO did not have a
21  job description for the subject position and had asked Nosal to draft one. The e-mail stated:

22            David, you are on for the HR search. I don't have a job
              description. You guys need to craft one and get me to
23            approve........please make sure that the payment terms are the
              aggressive ones you quoted. thx.
24

25        i.      On April 28, 2005, the defendant Christian sent the CEO of Company C a
26  position specification that was in large part identical in sum and substance to a position
27  specification recently obtained by J.F. from Korn/Ferry's computer system. This e-mail was
28  signed "David & Becky," and Nosal was copied on this e-mail.

INDICTMENT                           -7-

Other Instances of Misappropriation or Use of Information from Korn/Ferry's Computer System

       j.       During approximately the fourth quarter of 2004, immediately prior to her separation from Korn/Ferry in approximately January 2005, the defendant Christian created and downloaded Searcher Custom Reports containing over 3000 records. Christian took copies of these reports with her when she terminated her employment with Korn/Ferry.

       k.      On or about May 3, 2005, the defendant Christian sent an e-mail to the defendant Nosal and to M.J. with an attachment, indicating that the attachment related to a search that was being conducted for Company C. The attachment was a Searcher Custom Report spreadsheet containing approximately 19 executive names with contact information. The header of the spreadsheet contained the heading "Korn/Ferry International San Francisco." The defendant Nosal responded in an e-mail the same day, saying "thanks."

       l.       On or about May 26, 2005, M.J. sent two e-mails to J.F. containing the names of a total of approximately 17 individuals regarding whom J.F. was to obtain information from the Searcher database. M.J. obtained some of these names from Nosal. In the second e-mail, M.J. also requested information regarding a prior Korn/Ferry search engagement. In response to the defendant M.J.'s e-mails, J.F. obtained each individual's information from the Searcher database and obtained the information in that database regarding the prior Korn/Ferry search engagement identified by M.J. J.F. then copied all of the files containing the requested information onto a CD. J.F. later provided this CD to M.J. The defendant Nosal later used some or all of the information obtained from the Searcher database in a "pitch" meeting with representatives from Company D in which Nosal was attempting to be retained by that company to conduct an executive search and related activities.

       m.     At M.J.'s request, on or about June 3, 2005, J.F. performed a Searcher query for human resource managers working for various companies. In response to J.F.'s query, the Searcher database generated a Custom Report yielding approximately 366 executives with their pertinent information. J.F. then exported the Custom Report to a Microsoft Excel spreadsheet titled "Choc Chip Cookie Recipes," and saved the file to her computer Desktop folder. J.F. then copied the "Choc Chip Cookie Recipes" file onto a CD titled "ChocChip Cookies." J.F. later

1  provided this CD to M.J. for use in the Company C search.

2      n.     On or about July 29, 2005, using M.J.'s computer located in Nosal's new offices

3  in San Francisco, J.F. remotely logged into Korn/Ferry's computer network with her Korn/Ferry

4  username and password. Once logged in, J.F. returned control of the computer to M.J. M.J. then

5  proceeded to query Korn/Ferry's Searcher database and download information, including 25

6  Korn/Ferry source lists, from that database onto the computer.

7      All in violation of Title 18, United States Code, Sections 1832(a)(5) and 371.

8  / / /

9  / / /

10  / / /

11  / / /

12  / / /

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

INDICTMENT                    -9-

COUNTS TWO
THROUGH SEVEN: 18 U.S.C. §§ 1030(a)(4), 1030(c)(3)(A) & 2 — Unauthorized Access to a
Protected Computer with Intent to Defraud and Obtaining Something of
Value and Aiding and Abetting

20.     The factual allegations in paragraphs 1 through 11 and 13 through19 are re-

alleged and incorporated herein as if set forth in full.

21.     On or about the dates set forth in the separate counts below, in the Northern

District of California, and elsewhere, the defendants

DAVID NOSAL and
BECKY CHRISTIAN

did knowingly and with intent to defraud access a protected computer belonging to Korn/Ferry,

without authorization and by exceeding authorized access, and by means of such conduct did

further the intended fraud and obtain something of value, to wit, source lists and other

information belonging to Korn/Ferry:

| COUNT | DATE | ITEMS OBTAINED | ACCOUNT USED TO GAIN ACCESS |
|---|---|---|---|
| 2 | April 12, 2005 | Three Korn/Ferry source lists relating to prior searches for CFOs | Korn/Ferry computer user account of J.F. |
| 3 | April 27, 2005 | Position specifications for vice presidents of human resources at two different companies | Korn/Ferry computer user account of J.F. |
| 4 | May 26, 2005 | Information regarding 17 individuals and a prior Korn/Ferry search engagement | Korn/Ferry computer user account of J.F. |
| 5 | June 3, 2005 | Information regarding approximately 366 human resource managers | Korn/Ferry computer user account of J.F. |
| 6 | July 12, 2005 | Information regarding two individuals who were candidates for Company B CFO position | Korn/Ferry computer user account of J.F. |
| 7 | July 29, 2005 | 25 Korn/Ferry source lists relating to prior searches | Korn/Ferry computer user account of J.F. |

All in violation of Title 18, United States Code, Sections 1030(a)(4), 1030(c)(3)(A) and 2.

INDICTMENT                    -10-

COUNT EIGHT: 18 U.S.C. §§ 1832(a)(1), 1832(a)(2), 1832(a)(4) & 2 — Theft, Misappropriation, and Unauthorized Downloading of Trade Secrets and Aiding and Abetting

22. The factual allegations in paragraphs 1 through 11 and paragraphs 13 through 19 are re-alleged and incorporated herein as if set forth in full.

23. On or about April 12, 2005, in the Northern District of California, and elsewhere, the defendants

DAVID NOSAL and
BECKY CHRISTIAN,

with the intent to convert trade secrets belonging to Korn/Ferry, specifically, three Korn/Ferry source lists relating to prior searches for CFOs, as referred to in paragraph 19.b, to the economic benefit of someone other than Korn/Ferry, which trade secrets were related to and included in products that were produced for and placed in interstate and foreign commerce, did knowingly steal and without authorization appropriate, take, carry away, and conceal and by fraud, artifice, and deception obtain such information, and did knowingly and without authorization download, copy, and duplicate such information, from Korn/Ferry's computer system, and did attempt to do so, intending and knowing that such acts would injure Korn/Ferry.

All in violation of Title 18, United States Code, Sections 1832(a)(1), 1832(a)(2), 1832(a)(4), and 2.

///
///
///
///
///
///
///
///
///
///

INDICTMENT                    -11-

COUNT NINE:    18 U.S.C. §§ 1832(a)(3), 1832(a)(4) & 2 — Unauthorized Receipt and Possession of Stolen Trade Secrets and Aiding and Abetting

24.    The factual allegations in paragraphs 1 through 11 and paragraphs 13 through 19 are re-alleged and incorporated herein as if set forth in full.

25.    On or about April 12, 2005, in the Northern District of California, and elsewhere, the defendants

DAVID NOSAL and
BECKY CHRISTIAN,

with the intent to convert trade secrets belonging to Korn/Ferry, specifically, three Korn/Ferry source lists relating to prior searches for CFOs and information regarding CFOs that was "cut and pasted" from a source list in Searcher, as referred to in paragraphs 19.b and 19.g, to the economic benefit of someone other than Korn/Ferry, which trade secrets were related to and included in products that were produced for and placed in interstate and foreign commerce, did knowingly receive and possess such information, and did attempt to do so, knowing the same to have been stolen and appropriated, obtained, and converted without authorization, intending and knowing that such acts would injure Korn/Ferry.

All in violation of Title 18, United States Code, Sections 1832(a)(3), 1832(a)(4), and 2.

///
///
///
///
///
///
///
///
///
///
///

INDICTMENT                              -12-

1  COUNTS TEN
2  THROUGH SEVENTEEN: 18 U.S.C. §§ 1341 & 2 — Mail Fraud and Aiding and Abetting

3      26.    The factual allegations in paragraphs 1 through 11 and paragraphs 13 through 19
4  are re-alleged and incorporated herein as if set forth in full.

5      27.    Beginning on a date unknown to the Grand Jury, but by no later than in or about
6  November 2004 and continuing to in or about August 2005, in the Northern District of
7  California, and elsewhere, the defendants

8                         DAVID NOSAL and
                          BECKY CHRISTIAN
9

10  did devise and intend to devise a scheme and artifice to defraud as to a material matter, and to
11  obtain money and property by means of material false and fraudulent pretenses, representations,
12  and promises, which scheme and artifice is summarized below. In sum and substance, the
13  defendants Nosal and Christian, and others involved in the scheme and artifice, provided material
14  false information to, and purposefully omitted and concealed material information from,
15  Korn/Ferry regarding the defendant Nosal's executive search-related activities that were in
16  violation of the Nosal-Korn/Ferry Agreements.

17                              SCHEME TO DEFRAUD

18      28.    It was part of the defendants' scheme and artifice that Nosal and Christian
19  directed others to take without authorization and in excess of authorized access things of value
20  and trade secrets belonging to Korn/Ferry from Korn/Ferry's computer system.

21      29.    It was part of the defendants' scheme and artifice that Nosal and Christian used,
22  directed others to use, and ratified others' use of things of value and trade secrets stolen from
23  Korn/Ferry's computer system to conduct executive searches and related activities.

24      30.    It was further part of the defendants' scheme and artifice that, after Nosal entered
25  into the Nosal-Korn/Ferry Agreements, Nosal took actions to circumvent those agreements by
26  conducting his own executive search-related activities. Nosal did so, at least in part, so that he
27  could earn additional income over and above what Korn/Ferry had agreed to pay him during the
28  term of the Nosal-Korn/Ferry Agreements. In 2005, and unbeknownst to Korn/Ferry, Nosal

INDICTMENT                        -13-

1  received at least $500,000 in gross receipts for his executive search-related activities, through

2  payments from Christian & Associates LLC.

3      31.    It was further part of the defendants' scheme and artifice that Christian established

4  Christian & Associates LLC as a vehicle through which Nosal could conduct his executive search

5  activities. Nosal and Christian agreed that Nosal would receive approximately 80% of the

6  revenues of Christian & Associates LLC.

7      32.    It was further part of the scheme and artifice that the defendant Nosal

8  (a) affirmatively misrepresented on numerous occasions to Korn/Ferry executives that he was

9  complying with the Nosal-Korn/Ferry Agreements; (b) did not notify Korn/Ferry that he was

10 engaging in his own executive search activities; and (c) otherwise concealed and attempted to

11 conceal from Korn/Ferry that he was engaging in his own executive search activities. Nosal did

12 so, at least in part, so that he could continue to receive monthly independent contractor payments

13 of $25,000 from Korn/Ferry and so that he remained eligible to be paid the lump-sum payments

14 envisioned in the Nosal-Korn/Ferry Agreements.

15      33.    It was further part of the conspiracy that, for the purpose of concealing his

16 activities from Korn/Ferry and others, the defendant would use the fictitious name "David

17 Nelson" with candidates in relation to searches that he was conducting during the time that he

18 was receiving payments from Korn/Ferry under the Nosal-Korn/Ferry Agreements. Further,

19 because of her continuing employment with Korn/Ferry, J.F. also would use the fictitious name

20 "S.S." in relation to searches on which she was assisting Nosal.

21                          THE USE OF THE MAILS

22      34.    On or about the dates listed below, for the purpose of executing the scheme

23 and artifice set forth above, and attempting to do so, the defendants

24                          DAVID NOSAL and
                            BECKY CHRISTIAN,
25

26 as more specifically set forth below, did knowingly cause to be delivered by the United States

27 Postal Service and private and commercial interstate carrier according to the direction thereon,

28 / / /

INDICTMENT                          -14-

the matters and things as described below:

| COUNT | DATE OF MAILING | SENDER | RECIPIENT ADDRESS | ITEM MAILED |
|---|---|---|---|---|
| 10 | November 23, 2004 | Korn/Ferry | Danville, California | Check number 412547 in the amount of $25,000 |
| 11 | December 21, 2004 | Korn/Ferry | Danville, California | Check number 413453 in the amount of $25,000 |
| 12 | January 25, 2005 | Korn/Ferry | Danville, California | Check number 414403 in the amount of $25,000 |
| 13 | February 23, 2005 | Korn/Ferry | Danville, California | Check number 415300 in the amount of $25,000 |
| 14 | March 22, 2005 | Korn/Ferry | Danville, California | Check number 416550 in the amount of $25,000 |
| 15 | April 21, 2005 | Korn/Ferry | Danville, California | Check number 417790 in the amount of $25,000 |
| 16 | May 23, 2005 | Korn/Ferry | Danville, California | Check number 418864 in the amount of $25,000 |
| 17 | June 21, 2005 | Korn/Ferry | Danville, California | Check number 419783 in the amount of $25,000 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

INDICTMENT                    -15-

1    COUNT EIGHTEEN:        18 U.S.C. § 1349 — Conspiracy to Commit Mail Fraud

2        35.    The factual allegations in paragraphs 1 through 11, paragraphs 13 through 19, and

3    paragraphs 27 through 34, including the scheme to defraud set out therein, are re-alleged and

4    incorporated herein as if set forth in full.

5        36.    Beginning on a date unknown to the Grand Jury, but by no later than in or about

6    November 2004 and continuing to in or about August 2005, in the Northern District of

7    California, and elsewhere, the defendants

8                                DAVID NOSAL and
                                 BECKY CHRISTIAN
9

10   did knowingly and intentionally conspire and agree with each other to commit mail fraud, in

11   violation of 18 U.S.C. § 1341.

12              OVERT ACTS COMMITTED IN FURTHERANCE OF THE CONSPIRACY

13       37.    In furtherance of the conspiracy and to effect the objects thereof, the following

14   overt acts, among others, were committed in the Northern District of California, and elsewhere:

15       a.     In January 2005, the defendant Christian set up an executive search firm known as

16   Christian & Associates LLC;

17       b.     After his separation from Korn/Ferry and during the period that the Nosal-

18   Korn/Ferry Agreements were in effect, the defendant Nosal solicited search engagements from

19   various companies, including the companies referred to in paragraph 19, above. On at least some

20   occasions, Nosal requested that these companies formally retain Christian & Associates LLC to

21   perform any search engagements and remit any fees owed to Christian & Associates LLC, rather

22   than to Nosal;

23       c.     The defendant Christian remitted approximately 80% of the fees paid to her from

24   these companies to the defendant Nosal;

25       d.     On or about April 25, 2005, Company B formally retained Christian & Associates

26   LLC to conduct a search for a CFO. Both the defendant Nosal and the defendant Christian

27   worked on and participated in this search.

28       e.     On or about April 25, 2005, the defendant Nosal was retained by Company C to

INDICTMENT                          -16-

1  conduct a search for a person to fill a senior vice president of human resources position.

2        f.      After his separation from Korn/Ferry, the defendant Nosal participated in regular

3  telephonic meetings with Korn/Ferry's general counsel or another Korn/Ferry executive, or with

4  both, in which Nosal indicated that he remained in compliance with the Nosal-Korn/Ferry

5  Agreements. At no time during these meetings did Nosal ever disclose that he had been and was

6  currently conducting or assisting in non-Korn/Ferry executive search activities after October

7  2004.

8        g.      On or about July 7, 2005, the defendant Christian sent an e-mail to the defendant

9  Nosal reminding him that, with respect to appointments that J.F. was scheduling on behalf of

10  Nosal and Christian with respect to their executive search activities, J.F. used the name "S.S."

11  The text of that e-mail read, in pertinent part: "Member Jfl [J.F.] is now called [S.S.] as it relates

12  to 'our new assistant.'"

13        h.      On or about July 22, 2005, the defendant Nosal sent an e-mail to the defendant

14  Christian and J.F. in which he instructed J.F. to use the name "David Nelson" instead of "David

15  Nosal" when scheduling interviews with recruits. The text of that e-mail read, in pertinent part:

16          B [Christian] and Shelly [J.F.] - all of these people need to be seen
        asap no later then Wednesday aug 3rd. Please schedule the majority
17          for B to see the mon/tues/wed she is back. I can see a few but
        visibility is not good. Also, if scheduling me please use David
18          Nelson for my name.

19        All in violation of Title 18, United States Code, Section 1349.

20  DATED:                A TRUE BILL.

21  4-10-08

22                              FOREPERSON

23

24

25  BRIAN J. STRETCH
26  Acting United States Attorney

27  Approved as to Form:
28                 KYLE F. WALDINGER
               Assistant United States Attorney

INDICTMENT          -17-