UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-08-0237 EMC |
| Plaintiff, | |
| v. | **FINAL PRETRIAL CONFERENCE ORDER** |
| DAVID NOSAL, | |
| Defendant. | |

## I.  TRIAL DATE & LENGTH OF TRIAL

Jury selection shall be held on April 8, 2013, at 8:30 a.m.

The jury trial shall begin on April 9, 2013, with opening statements.  Trial days shall last from 8:30 a.m. to 2:00 p.m., except that the first day shall last from 8:30 a.m. to 4:00 p.m.  The Court may determine that additional full trial days are necessary as the trial progresses.  Thursdays are dark.

## II.  PROCEDURE FOR EXHIBITS AT/DURING TRIAL

A.  No later than the end of each trial day, counsel shall inform opposing counsel of which exhibits, if any, he or she intends to introduce during the next trial day and, if necessary, with respect to which sponsoring witness.  If any such exhibits are still objected to, both counsel shall notify the Court after the jury is excused for the day and shall identify the exhibits at issue and the objections.  The Court will then schedule a conference that afternoon or the following morning to resolve the dispute.

B.    At the end of each trial day, counsel shall also provide opposing counsel with a tentative preview of the exhibits he or she intends to introduce during the trial day after next.  Though this is not binding, parties are directed to make a good faith effort to ensure such previews are as accurate as possible.

C.    With respect to exhibits to be used on the first day of trial, counsel shall inform opposing counsel of which exhibits, if any, he or she intends to introduce by Thursday, April 4, 2013, at 5:00p.m.  If any such exhibits are still objected to, both counsel shall notify the Court by April 5, 2013, at 2:00 p.m., and shall identify the exhibits at issue and the objections.  The Court will then address the dispute on the first day of trial, April 8, 2013, before any testimony begins.

D.    If a party intends to use a projector or other equipment to show an exhibit (or demonstrative) to the jury, that equipment shall be set up and ready for use by 8:30 a.m. each day.  The parties should immediately file with the Court, if necessary, administrative requests to bring projectors and/or other equipment to the courthouse for use at trial.

### III.    PROCEDURE FOR WITNESSES AT/DURING TRIAL

A.    Each party shall be prepared, during its case in chief or any rebuttal, to present its next witness.  At any time, if the party whose case is being presented is not prepared to present its next witness, that party shall be deemed to have rested that portion of its case.  No further witnesses shall be permitted by the party who has so rested in that portion of the case (*e.g.*, case in chief or rebuttal).

B.    Counsel are expected to cooperate with each other in the scheduling and production of witnesses, including informing one another of witness order.  At the end of each trial day, Counsel shall give opposing counsel notice of which witnesses will be testifying on the following day.  At that time, counsel shall also provide a tentative preview of witnesses who are expected to testify the day after next.  Witnesses may be taken out of order if necessary.  Every effort shall be made to avoid calling a witness twice (as an adverse witness and later as a party's witness).

C.    Only one lawyer for each party may examine any single witness.

D.    If a witness is testifying at the time of a recess or adjournment and has not been excused, the witness shall be seated back on the stand when the Court reconvenes. If a new witness is to be called immediately following recess or adjournment, the witness should be seated in the front row, ready to be sworn in.

E.    Counsel shall refrain from eliciting testimony regarding any undisputed facts as set forth in any stipulation filed with the Court. The Court may read to the jury such undisputed facts at appropriate points in the trial.

F.    Witnesses shall be excluded from the courtroom until completion of their testimony, with the exceptions noted below in the discussion of the government's seventh motion in limine..

## IV.   OTHER PROCEDURES AT TRIAL

A.    To make an objection, counsel shall rise, say "objection," and briefly state the legal ground (*e.g.*, hearsay or irrelevant). There shall be no speaking objections or argument from either counsel unless requested by the Court.

B.    Bench conferences, or the equivalent of sidebars, will not be permitted absent truly extenuating circumstances. Disputes regarding exhibits shall be resolved as set forth in Part II, *supra*. Any other disputes or problems should be addressed either before the trial day commences, at the end of the trial day, or during a recess, if necessary.

## V.   PLAINTIFF'S MOTIONS IN LIMINE

A.    <u>Motion in Limine No. 1</u>

The government asks the Court to bar Defendant from offering as evidence his own out of court statements. The government argues that such statements would be hearsay. It also notes that Federal Rule of Evidence 802(d)(2) does not render such statements nonhearsay because the rule only allows a party to offer as evidence the *opposing* party's statement. *See* Fed. R. Evid. 802(d)(2) (providing that a statement "offered against an opposing party" is not hearsay). In other words, under the rule, while the government may offer as evidence Defendant's statements, Defendant may not.

Defendant does not dispute the government's application of Rule 802(d)(2), but argues that the Court should not grant a blanket exclusion of all out-of-court statements Defendant may wish to

offer because they may fall within other exceptions to the hearsay rule. Docket No. 313 at 1-2. For example, he notes that some out of court statements may be admissible as present sense impressions, excited utterances, or to show state of mind. Further, some such statements may be offered for purposes other than establishing the truth of the matter asserted – for example to show notice or effect on the listener or as an operative act – and that they would thus be admissible for these non-hearsay uses. Defendant urges this Court to defer ruling on the government's motion, as the admissibility of various out of court statements will depend on the specific circumstances and the purpose for which they are offered.

As the admissibility of Defendant's out of court statements depends not just on Rule 802(d)(2), but also on the applicability of other rules to the specific statement offered, the Court reserves ruling on the government's motion at this time.

B.    <u>Motion in Limine No. 2</u>

The government asks the Court to preclude any reference by Defendant to his potential sentence. The government notes that "[i]t has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992). This is reflected in the Ninth Circuit Model Criminal Jury Instructions. *See* 9th Cir. Model Criminal Jury Instruction No. 7.4 (providing that "[t]he punishment provided by law for this crime is for the court to decide[;] [y]ou may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt").

In response, Defendant agrees with the prosecution that references to potential punishment are impermissible.

Accordingly, the Court **GRANTS** the motion in limine.

In the response and reply on this motion in limine, the parties also dispute the admissibility of evidence related to the plea agreements of Defendant's co-conspirators. These arguments are considered as Defendant's second motion in limine below.

C.    <u>Motion in Limine No. 3</u>

The government asks that Defendant be precluded from introducing testimony or making argument that Korn/Ferry may have had knowledge or suspicion of the actions of Defendant and his

co-conspirators, and that this fact may be a defense to the counts under the CFAA.[1]  The government contends that it is not a defense to the CFAA counts that the victim of the crime was aware of or suspected the scheme to defraud.  The relevant provision of the CFAA provides criminal penalties for anyone who:

> knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period.

18 U.S.C. § 1030(a)(4).  The government argues that this provision focuses on the intent of the defendant ("with the intent to defraud"), and points to various cases holding that there may be criminal liability for schemes to defraud even where the victim was unlikely to be deceived.

Defendant counters that the information about Korn/Ferry's knowledge or suspicions is relevant to the question of whether his co-conspirators acted "without authorization" under the CFAA.  Docket No. 313 at 3-4.  Defendant contends that he had authorization during the relevant period of time as an independent contractor, and states that he intends to prove that Korn/Ferry permitted him to use B.C. and M.J. to run searches on his behalf.  He argues that Korn/Ferry's knowledge of his activities and the activities of his co-conspirators, and Korn/Ferry's failure to intervene to stop their activities, corroborates his assertion that Korn/Ferry authorized access for all co-conspirators.  Defendant additionally notes that it is the government who intends to introduce evidence of Korn/Ferry's knowledge as part of its case-in-chief, and that Defendant should not be prevented from making arguments about the significance of these facts.

Since Defendant has articulated a theory by which Korn/Ferry's knowledge or suspicions of the actions of Defendant and co-conspirators would be relevant to whether they had authorized access under the CFAA, the government's third motion in limine is **DENIED** without prejudice.  If

---

[1]  The government concedes, however, that such evidence may be relevant on other counts in the indictment.  For example, the government acknowledges that evidence of Korn/Ferry's knowledge and suspicions may be relevant to the question of whether they took "reasonable measures" to protect the trade secrets in the computer system, the theft of which is the subject of Counts Ten and Eleven.  Docket No. 303 at 10-11.

the trial evidence unfolds in a way that makes Korn/Ferry's knowledge irrelevant, the government may renew the motion.

D.      Motion in Limine No. 4

The government seeks to exclude any evidence or argument that Defendant's separation agreement with Korn/Ferry was illegal, void, or otherwise unenforceable. When Defendant ceased to work for Korn/Ferry as an employee in the fall of 2004, he and Korn/Ferry executed two related agreements: a Separation and General Release Agreement, and an Independent Contractor Agreement. Gov. Mot. in Limine Ex. 1 (filed under seal). In these agreements, Plaintiff agreed to continue to work for Korn/Ferry from the date of his separation as an employee until October 15, 2005 in order to complete, or effect an orderly transition of, the executive searches he had been working on as an employee. Separation Agreement ¶ 2; Contractor Agreement ¶ 1-2. In return for his services, he would be paid $25,000 per month, plus 70% of net billed and collected fee revenues for Fiscal Year 2005. Separation Agreement ¶ 3; Contractor Agreement ¶ 4. The two agreements contain substantially similar paragraphs, both titled "Restrictive Covenants," that prohibit Defendant from engaging in certain activities during the period that he is an independent contractor. Separation Agreement ¶ 7; Contractor Agreement ¶ 7. Specifically, he was not to solicit or accept search assignments from current Korn/Ferry clients, solicit Korn/Ferry employees to leave Korn/Ferry, disrupt or impair Korn/Ferry's relationships with existing clients, or

> perform services for, or otherwise be employed, join, participate, or become involved in any manner or capacity, whether as an owner in whole or in part, employee, consultant, agent, partner, investor, individual, or in any other capacity, with any person (including himself), corporation, partnership, firm, or other business entity, in whatever form, which is engaged in the business of executive search or placement, management assessment, or management audit.

Separation Agreement ¶ 7; Contractor Agreement ¶ 7. The government alleges that Defendant violated the non-compete clauses in setting up a rival executive search firm, and in recruiting other current or former Korn/Ferry employees to help him in that venture.

1.      Relevance

In its reply, the government contends that the legality of the non-compete clause is not relevant to any of the charges in the indictment, and that Defendant should thus be barred from

making argument on this front even if he is correct that the clause was unenforceable. Docket No. 333 at 14-15. The restrictions on access to the Korn/Ferry's database and whether the data at issue were trade secrets does not turn on the legality of the non-compete clause in the separation agreement.

As was made clear at the hearing, however, the government does intend to introduce evidence of the non-compete agreement itself. The government contends that the existence of the agreement is important to provide the foundation for some of its witnesses. For example, it appears that Korn/Ferry began its internal investigation into the activities of Defendant and his co-conspirator because of an anonymous email indicating that Defendant was violating the non-compete agreement. Defendant, for his part, states that he intends to introduce evidence of his contemporaneous belief that the non-compete agreement was oppressive and wrong, and argues that this is relevant to explain some of his actions during the relevant period of time.

Whether the agreement is in fact valid is irrelevant to this case and thus lacks probative value. Moreover, a trial on actual legality would result in a mini-trial on a collateral issue which could require the resolution of facts by the jury. This will case confusion and inefficiency. Thus, argument and evidence on the question of legality is excluded under F.R.E. 403. Furthermore, focusing substantial trial time on the validity vel non of the non-compete agreement may unduly emphasize a wrong committed by Defendant and raises concerns under F.R.E. 403 and F.R.E. 404(b). On the other hand, limited evidence as to an individual's subjective beliefs about the validity of the agreement where relevant may be admitted.

This Court will not allow, however, arguments that this evidence is relevant to the Defendant's intent to defraud. The government stated its intent to argue that "[t]he fact that Nosal was breaking promises he made to Korn/Ferry *at the same time* that the charged conduct was occurring is probative of whether he possessed an intent to defraud Korn/Ferry with respect to the charged offenses." Docket No. 349 at 6. This Court disagrees. Whether Defendant was legally entitled to set up a competing executive search firm does not turn on whether he was entitled to access Korn/Ferry's computers and take and use information from the Searcher database. Nor is the legality of his new business probative to his motive to access and take trade secrets – his financial

incentive to do so would be obvious from the fact of his new business, not its legality. In addition to its inadmissibility under F.R.E. 403, any argument that Defendant's conduct in violating a valid agreement strengthens the inference of his propensity to commit fraud or theft is additionally barred under F.R.E. 404(b).[2]

Accordingly, the government's fourth motion in limine is **GRANTED** in part and **DENIED** in part. Either party may introduce evidence of a person's subjective belief about the validity of the non-compete clause where it is relevant to and otherwise admissible, subject to F.R.E. 403. Neither party, however, may introduce evidence or offer argument about whether the non-compete clause was actually legal and enforceable. Further, the government may not argue that Defendant's breach of the agreement is probative to his motive or intent to defraud. The Court will instruct the jury that the legality of the agreement is not relevant to the issues in this case, and that they may consider people's subjective beliefs on the legality of the agreement only to the degree that it helps to explain their actions.[3]

E.     Motion in Limine No. 5

The government seeks to exclude any evidence that Defendant was obligated to produce prior to trial pursuant to Rule 16(b). The government contends that it has requested such discovery, but that Defendant has produced nothing. In the alternative, the government seeks an order compelling Defendant to comply with his discovery obligations. In his response, Defendant indicates merely that he intends to comply with his discovery obligations "in a manner consistent with his constitutional protections." Docket No. 313 at 13.

---

[2] The government cites to *United States v. Dupree*, 706 F.3d 131 (2d Cir. 2013) in support of its position. That case is distinguishable, however, in that the order the court there found admissible was directly relevant to the charged conduct: the order concerned the defendant's obligations under an agreement that he was charged with fraudulently evading. Here, on the other hand, the non-compete agreement is only collaterally related to the charges of theft of trade secrets and unauthorized access of a protected computer. Additionally, in *Dupree*, the Second Circuit determined only that the order in question was potentially admissible, and remanded to the district court to conduct a F.R.E. 403 analysis. Here, this Court is precluding the government from arguing that the non-compete agreement is relevant to Defendant's intent to defraud because, under F.R.E. 403, the risk of unfair prejudice and substantial wasted trial time on a collateral issue substantially outweighs any minimal probative value that the agreement has on this question.

[3] This ruling also resolves Defendant's first supplemental motion in limine. Docket No. 344 at 1-6.

Defendant is ordered to provide the government with the required information regarding his expert witness by Monday, April 1. Defendant is additionally ordered to provide the government with a witness list and exhibit list by Wednesday, April 3. These lists shall include a short description of the expected testimony of each witness and shall identify any documents Defendant is likely to introduce through witnesses it calls and examines on direct.

F.  Motion in Limine No. 6

The government requests that this Court enter a protective order covering proprietary and confidential information belonging to Korn/Ferry. The government notes that under the Economic Espionage Act, courts "shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets, consistent with the requirements of the Federal Rules of Criminal and Civil Procedure, the Federal Rules of Evidence, and all other applicable laws." 18 U.S.C. § 1835. Counts five and six of the second superseding indictment arise under the Economic Espionage Act. Additionally, the Federal Rules of Criminal Procedure provide that unless there is a court order to the contrary and subject to certain exceptions, filings with the court should redact in whole or in part social security numbers, taxpayer identification numbers, birth dates, names of minors, financial account numbers, or home addresses of individuals. Fed. R. Crim. P. 49.1.

The government specifically notes that it expects the following will likely be introduced at trial: (1) documents that include financial account numbers; and (2) spreadsheets with information from Korn/Ferry's proprietary Searcher database. Docket No. 303 at 17. The government states that the spreadsheets often contain Korn/Ferry's proprietary or confidential information, and that they may contain the cell or home phone number, home address, or other confidential information about various executives. Accordingly, the government requests a protective order requiring that the party and the Clerk's office take measures to ensure that such material not be copied or disseminated, and further requests that when such documents are displayed on television monitors in trial, that the monitors facing the audience be turned off.

Defendant does not generally object to the protective order as to the allegedly confidential material, though he does dispute the government's contention that significant amounts of material

will fall within the scope of Rule 49.1.  Defendant objects, however, to a protective order which designates certain materials as trade secrets, as one of the questions the jury is required to address is whether the Korn/Ferry materials meet the legal definition of a trade secret.  Docket No. 14.  He thus contends that a protective order designating certain materials to be trade secrets would provide unfair support to the government's position on this issue.[4]  The government "agrees that the Court should not adopt any protective measures that suggest to the jury that any of the materials claimed to be trade secrets are in fact trade secrets."  Docket No. 333 at 12.

For the purposes of protecting the privacy of the individuals whose information is contained in the source lists and related documents, the government's request to turn off the television screens facing the audience when such documents are displayed is **GRANTED**.  The Court shall not, however, limit Defendant's scope of cross examination on this basis to prevent the audience from hearing testimony on any of the information contained in the documents.  Further, if it appears that they jury has become aware that the monitors are being turned off for certain exhibits, this Court will inform the jury that this is done to protect the privacy of certain individuals, and not because the Court has made any determination as to whether or not the documents involve contain trade secrets.

Furthermore, the parties and the Clerk's Office will take reasonable steps to make sure private information is not copied or disseminated to preserve their confidentiality after trial.

G.      <u>Motion in Limine No. 7</u>

The government seeks an order excluding all witnesses from the courtroom during the trial except the FBI agents who have worked on this case.  Defendant does not object to this request, but reserves the right to request that any of his expert witnesses be permitted to observe trial testimony.  Docket No. 313 at 14.  The Federal Rules of Evidence generally permits any party to request the exclusion of witnesses from the courtroom, though witnesses may not be excluded where they are people "whose presence a party shows to be essential to presenting the party's claim or defense."

---

[4]  Defendant also argues that shielding information presented to the jury from the public would run afoul of his right to a public trial under the Sixth Amendment.  Given that television screens allowing the audience to view exhibits offered by the parties are a recent innovation, and are still not present in many courtrooms, this Court rejects Defendant's suggestion that turning off these monitors for some select exhibits violates his constitutional rights.

F.R.E. 615(c). The Ninth Circuit has held that expert witnesses may, but do not necessarily, fall within the Rule 615(c) exception. *United States v. Seschillie*, 310 F.3d 1208, 1213 (9th Cir. 2002). The government does not object to allowing a properly noticed defense expert to be present during the trial, so long as said witness is properly disclosed before trial.

The government's seventh motion in limine is **GRANTED**, except that Defendant's properly disclosed expert witness may also be present in the courtroom during the trial.

## VI. DEFENDANT'S MOTIONS IN LIMINE

A.   Motion in Limine No. 1

Defendant seeks to preclude the government from introducing evidence of his extramarital affair with his co-defendant Becky Christian. The affair ended "somewhat acrimoniously" in 2005. Docket No. 304 at 2. Christian has accepted a plea deal from the government, and is expected to testify against Defendant at trial. Defendant argues that evidence of the affair is not relevant to any element the government must establish to prove its case, and that such evidence raises the possibility of unfair prejudice. He also argues that if Christian testifies about the end of their relationship in a way that paints him in a negative light, he would be entitled to respond to her testimony, thus creating the risk of a mini-trial, confusion for the jury, and a waste of time.

Evidence of Defendant's relationship with Christian is relevant for a number of reasons. First, as Defendant is facing conspiracy charges based on allegations that he, Christian, and others worked together to misappropriate Korn/Ferry's trade secrets, the affair gives relevant insight into the relationship between the Defendant and his alleged co-conspirator. Second, evidence of a close relationship between the parties can help explain why Christian has knowledge of certain facts, such as Defendant's thoughts, motives, and intentions during the course of events at issue here. Third, the affair can provide insight into Defendant's motivation for various actions taken around the time and after he left his employment with Korn/Ferry. Finally, it is relevant to counter any argument raised by Defendant that he was unaware of Christian's actions in downloading information from the Korn/Ferry database. Various courts of appeal have found evidence of sexual relationships relevant for these and similar purposes. *See e.g.*, *United States v. Potter*, 616 F.2d 384, 387 (9th Cir. 1979) (evidence of doctor's sexual relationship with patients to whom he unlawfully prescribed controlled

substances relevant to motive, lack of good faith in medical treatment of patients); *United States v. Brockenborrugh*, 575 F.3d 726, 736 (D.C. Cir. 2009) (district court did not abuse discretion in allowing cross examination on affair defendant was having with co-defendant where it was relevant to defendant's credibility and to the closeness of the relationship between the two).

Defendant cites in two cases support of his argument that appellate courts have given "close scrutiny" to "evidence of ancillary sexual affairs" because of the danger of unfair prejudice, but these cases do not support the exclusion of evidence of the affair in this case. In *S.M. v. J.K.*, the Ninth Circuit held that the district court did not err in excluding evidence of a sexual assault victim's extramarital affair under Rule. 412, which governs admissibility of evidence of a sexual assault victim's sexual behavior or predisposition. 262 F.3d 914, 918-19 (9th Cir. 2001) *amended*, 315 F.3d 1058 (9th Cir. 2003). As this case was decided under Rule 412 rather than Rule 403 and involved the special considerations involved when introducing evidence of the sexual history of sexual assault victims, it is inapplicable to the issue here.

The court's opinion in *United States v. Cass*, on the other hand, did concern the admissibility of evidence of an extramarital affair under Rule 403. 127 F.3d 1218, 1225 (10th Cir. 1997). In that case, the defendant was charged with making false statements to a federal agent after she reported that she had been kidnapped. *Id.* at 1219. At the trial, one witness provided testimony that he and the defendant had been having an extramarital affair, and they had been together during the time she claimed she had been kidnapped. *Id.* at 1220-21. Another witness, one of the F.B.I. agents investigating the alleged kidnapping, testified that many individuals he spoke to in the course of the investigation indicated that the defendant was having extramarital affairs with several men. *Id.* at 1220. The court there held that while the hearsay testimony of the F.B.I. agent was inadmissible because the probative value was substantially outweighed by the danger of unfair prejudice, the court ultimately found the error harmless because "the jury properly heard in detail from [the first witness] about one of [the defendant's] affairs." *Id.* The court did not include any discussion of why the hearsay evidence of the affairs was inadmissible under Rule 403. *Id.* at 1220, 1225. This case is unhelpful to Defendant for a number of reasons. In addition to being out-of-circuit, it also

indicates that evidence of extramarital affairs *may* be admissible under some circumstances, and contains no useful discussion of the proper analysis of such evidence under Rule 403.

While evidence of the affair is relevant and probative, it is likely, however, that there is at least some danger of unfair prejudice from introduction of evidence of the affair, in addition to the risk of confusing the jury and wasting time on collateral issues.[5]  In this case, the F.R.E. 403 dangers can be minimized by limiting the what information about the affair the government may introduce. For example, the government represents that it does not intend to ask Christian about who was to blame for the end of the affair, nor will it inquire into "any prurient details" of the affair.  Docket No. 315 at 2, 8-9.  The Court will enforce those representations.

Accordingly, Defendant's first motion in limine is **DENIED**.  The parties shall be permitted to reference the relationship and the fact that it ended, but testimony that pertains to recriminations over the end of the relationship or prurient details shall not be permitted.  Further, the Court shall not allow gratuitous testimony on the affair by witnesses other than Christian.

On March 27, Defendant submitted a supplemental motion in limine seeking to exclude all mention of the fact that he was married, and to preclude any witness from referring to his relationship with Christian as "an affair."  Docket No. 344 at 6-8.  The government agrees not to refer to Defendant's marital status on direct, but notes that it may come up if Defendant pursues certain lines of questioning in cross examining the government's witnesses.  Defendant's supplemental motion in limine to exclude mention of his marital status is GRANTED in part in that the government is precluded from eliciting information about Defendant's marital status on direct examination.  This does not, however, preclude the government's witnesses from mentioning Defendant's marital status during cross examination if it is relevant to the question asked.  The government shall forewarn its witnesses to avoid mentioning Defendant's marital status where possible.

---

[5]  Defendant also notes that evidence of the extramarital affair could run afoul of Rule 404(b), which provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  The government states that it "does not intend to argue or suggest that the defendant's relationship with the witness was a 'prior bad act' under Federal Rule of Evidence 404(b), or that it is evidence of his bad character."  Docket No. 315 at 2.

1      Additionally, if Defendant so chooses, the parties are also directed to meet and confer to

2  determine whether they can stipulate to a limiting instruction for the jury regarding its consideration

3  of evidence of the affair.

4  B.      Motion in Limine No. 2

5      Though Defendant originally only submitted one motion in limine, he attached an additional

6  motion in limine as an exhibit to his late-filed pretrial brief.  Docket No. 334 Ex. 2.  In this second

7  motion in limine, he seeks to exclude all reference to the plea agreements and non-prosecution

8  agreement of his alleged co-conspirators.  Docket No. 334-2 at 3-6.  As noted above, the parties also

9  offered argument on this question in their briefing on the government's second motion in limine.

10      As Defendant is being charged with various conspiracy charges, the government's theory is,

11  at least in part, that he is guilty because his co-conspirators committed various crimes.  He argues

12  that because he intends to argue that the actions he and the co-conspirators took did not constitute

13  crimes, it would prejudice the jury to know that the co-conspirators took plea deals, thus admitting

14  guilt to a crime.  Docket No. 334-2 at 4-5.  Defendant states that he will stipulate not to attack the

15  credibility of the witnesses based on the plea deals.  *Id.* at 4.

16      Though the government represents that it does not intend to introduce the plea deals

17  themselves into evidence, it does intend to elicit testimony from the witnesses about their guilty

18  pleas and their agreements with the government.  Docket No. 317 at 20, 25; Docket No. 333 at 2-5.

19  The government argues that the witnesses' testimony about the plea agreements "will allow the jury

20  to assess their credibility, show that Nosal is not being selectively prosecuted, explain the basis for

21  their knowledge of the conspiracy, and explain why they are willing to testify publicly about their

22  involvement in criminal activity."  Docket No. 333 at 9.  The government has proposed a jury

23  instruction specifying that the guilty pleas are not evidence against the defendant, and that they may

24  be considered only in assessing the credibility of the witness.  *Id.*

25      While a guilty plea of a co-defendant may not be used as evidence of a defendant's guilt, it

26  may be used in evaluating the co-defendant's credibility as a witness.  *United States v. Halbert*, 640

27  F.2d 1000, 1004 (9th Cir. 1981).  Generally, either party may introduce evidence of the plea

28  agreement on the issue of the witness's credibility.  *Id.*; *see also* F.R.E. 607 (parties may impeach

14

their own witnesses). The Ninth Circuit has recognized that the prosecution may, for example, "wish to place the plea before the jury so as to blunt defense efforts at impeachment and dispel the suggestion that the government or its witness has something to hide." *Id.* In this case, however, where the defendant has stipulated that he will not attack the credibility of the witnesses based on the plea deals, the probative value of the guilty pleas is minimal. The witnesses' credibility is not threatened because Defendant will not impeach on the basis of the pleas. Defendant does not assert selective prosecution. The factual basis for witnesses' knowledge of the events will be elicited irrespective of whether they entered a plea. In contrast to the limited probative value, there is substantial prejudice to Defendant. In pleading guilty, Defendant's co-conspirators state not only that their behavior (upon which Defendant's criminal liability is based) was criminal, but also that they believed the Korn/Ferry documents that they took were trade secrets, a fact which Defendant hotly contests. There is a spillover risk of inferring Defendant's guilt simply from the pleas. The risk of unfair prejudice substantially outweigh the little, if any, probative value of the pleas in light of Defendant's stipulation and is therefore barred under F.R.E. 403.

Defendant's second motion in limine is therefore **GRANTED**, provided that Defendant does not impeach any of the witnesses in question based on their plea or non-prosecution agreements with the government.

## VII.    WITNESSES & EXHIBITS

A.    Government's Witnesses and Exhibits

The government has submitted a witness list identifying 26 individuals but reserving "its rights, in keeping with the Federal Rules of Criminal Procedure, to expand this list before trial and to call additional witnesses as may be necessary during trial." Docket No. 318 (Gov.'s Witness List at 1). Defendant has submitted no objections to the government's witness list. The government does not intend to rely on any informants, but will use the testimony of Defendant's co-conspirators who have entered plea or non-prosecution agreements with the government. Docket No. 315 at 14.

The government has also submitted an exhibit list identifying 187 items but reserving "the right to amend the list prior to and during trial as necessary." Docket No. 317 (Gov.'s Ex. List at 1).

The list indicates Defendant's objections and the government's responses.  The Court's rulings on the objections are as follows:

- • Exhibit 3: OVERRULED
- • Exhibit 4: OVERRULED as MOOT (government intends to use only to refresh recollection)
- • Exhibit 6: The Court reserves ruling on this objection.  Relevance to be determined at trial.
- • Exhibit 28: If the government does not produce a witness who can testify to the identity of the handwriting, it may only introduce a version of this document with the handwriting removed.
- • Exhibit 30: OVERRULED (slide titles will be redacted)
- • Exhibit 38: OVERRULED as MOOT (government intends to use only to refresh recollection).
- • Exhibit 142: SUSTAINED.  See also ruling on Defendant's Second Motion in Limine.
- • Exhibit 145: SUSTAINED.  See also ruling on Defendant's Second Motion in Limine.
- • Exhibit 146: SUSTAINED.  See also ruling on Defendant's Second Motion in Limine.
- • Exhibit 187: OVERRULED as to relevance.  Defendant's quotes in the press release are the statements of an opposing party and are thus not hearsay.  F.R.E. 801(d)(2).  To the degree that the government can demonstrate that the remainder of the press release is a statement of Defendant's or his agent, it is likewise admissible.
- • Exhibit 189: SUSTAINED.  See also ruling on Defendant's Second Motion in Limine.

Defendant also objects to the government's introduction of excerpts of voicemail messages left for Becky Christian by Defendant and others.[6]  Gov. Ex. 184, 185.  These messages contain a combination of personal and business information, and many appear to date from the time when Defendant and Christian's romantic relationship was ending.  A number of messages appear to be largely or entirely irrelevant to the issues in this case, while others contain a mixture of relevant and irrelevant information.  In light of the Court's ruling on Defendant's first motion in limine above, the parties are ordered to reach an agreement about how this redacted evidence will be presented and to reach an agreement on redactions and inform the Court of their resolution by Wednesday, April 3, 2013.

The government stated at the hearing that it would provide the Defendant with grand jury transcripts by March 29, 2013, but that it had otherwise disclosed all materials required by *Brady.*  Additionally, at the hearing Defendant indicated that he would not raise any objections as to foundation to the bank records the government intends to introduce at trial.  The parties will attempt to reach stipulations to avoid the need for foundational witnesses on emails.  The parties are ordered to submit a list of such stipulations to the Court by Friday, April 5, 2013 at noon.

The Court notes that Defendant has not objected to testimony about the arbitration on the grounds that the arbitration is confidential.

B.     Defendant's Witnesses and Exhibits

Defendant has not yet filed a witness or exhibit list with the Court.  As discussed above Defendant is ordered to provide the government with a witness list by Wednesday, April 3 that includes a short description of the expected testimony of each witness and identifies any documents that will be used in the course of the witness's testimony.

1.     Aggarwal Documents

The government objects to the introduction as evidence of some documents Defendant has disclosed to it.  Docket No. 328.  Defendant has indicated that these documents pertain to former Korn/Ferry employee Punit Aggarwal.  These documents appear to consist largely of profiles of

---

[6] One message on the CD provided by the government is from J.F., and one is from M.J.

17

executives, and notes related to executive searches.  The government objects to these documents on two fronts:  (1) it is not clear that Mr. Aggarwal obtained them with Korn/Ferry's knowledge or permission;[7] (2) the end of Mr. Aggarwal's employment with Korn/Ferry in 2009 post-dates the events that form the basis for the indictment, and thus are not relevant. to the charged offenses.

At the hearing, Defendant indicated that the documents relate to Korn/Ferry's practice of importing source lists of candidates from other executive search companies into Searcher when employees from Korn/Ferry join the company.  He states that the documents provide evidence that it was industry practice for employees to take source lists with them when they leave a company, and that they are thus relevant to the question of whether the source lists at issue in this matter were trade secrets.  As Defendant has articulated a theory of relevance for these documents, the government's objection is **OVERRULED.**

## VIII.    JURY VOIR DIRE

The Court has reviewed the parties' stipulated jury questionnaire and the remaining disputes.  At the hearing, the parties indicated that they intended to further revise the questionnaire.  The parties are ordered to submit their revised questionnaire to the Court by Friday, March 29, 2013.  Once this Court rules on any remaining disputes, Defendant will make a minimum of 80 copies of the questionnaire and provide them to the Court (directed to Betty P. Lee, Courtroom Deputy Clerk of the undersigned) by 10:00 a.m. on Thursday, April 4, 2013.  Prospective jurors will be provided with the questionnaire on Friday, April 5, and the government will distribute copies of all completed questionnaires for both parties and the Court by 3:00 p.m. that day.

## IX.    JURY INSTRUCTIONS & JURY VERDICT FORM

The Court shall file shortly hereafter proposed jury instructions and a proposed jury verdict form.  **The parties shall provide comments on the instructions on a date to be specified**.  On April 3, 2013, the parties shall submit a list of stipulated facts, and a stipulated statement of the case to be read to the jury with the initial instructions.

---

[7]  The government does not explain why this fact, if true, would render the documents inadmissible.

# X.    OBJECTION TO ORDER OF MAGISTRATE JUDGE

On March 1, 2013, Magistrate Judge Cousins granted in part Defendant's motion for a subpoena duces tecum under Federal Rule of Criminal Procedure 17(c).  Docket No. 308.  Defendant had requested various documents from Korn/Ferry that he claimed were necessary to his defense.  Korn/Ferry now submits its objections to Judge Cousins' order, and moves to quash the subpoena.  Docket No. 322.  Korn/Ferry contends that Judge Cousins, applied the wrong legal standard in determining whether to quash the subpoena, following the out-of-circuit district court opinion in *United States v. Nachamie*, 91 F. Supp. 2d 552 (S.D.N.Y. 2000), rather than the test set out by the Supreme Court in *United States v. Nixon*, 418 U.S. 683, 698 (1974).  A district court considering objections to a nondispositive order of a magistrate judge may modify or set aside any part of the magistrate judge's order that is "contrary to law or clearly erroneous."  Fed. R. Crim. P. 59(a).

For the reasons stated on the record at the pretrial conference, and for the following reasons, this Court **GRANTS** in part and **DENIES** in part Korn/Ferry's motion.

It appears that in the briefing before Judge Cousins, no party identified the Ninth Circuit's decision in *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981), in which the court reversed a district court order granting a third party subpoena.  *Id.*  There, the court applied the test in *Nixon*, and explicitly held that "we see no basis for using a lesser evidentiary standard merely because production is sought from a third party rather than from the United States."  *Id.*  Courts in this district citing *Fields* have likewise rejected the contention that third party subpoenas are not governed by the standard in *Nixon*.  *See United States v. Collins*, 11-CR-00471-DLJ PSG, 2013 WL 1089908 (N.D. Cal. Mar. 15, 2013) ("While other courts have suggested that the Supreme Court's evidentiary restrictions on Rule 17(c) subpoenas apply only to subpoenas on the government, the Ninth Circuit has specifically rejected this view and applied its teachings where, as here, the subpoena target is a third party."); *United States v. Johnson*, CR 94-0048 SBA, 2008 WL 62281 (N.D. Cal. Jan. 4, 2008) ("And whether a Rule 17(c) subpoena is to be issued upon a third party or the government, the defendant must meet the same standard."); *United States v. Reyes*, 239 F.R.D.

591, 597 n.1 (N.D. Cal. 2006) (citing *Fields* for the proposition that "the Ninth Circuit has flatly rejected [the defendant's] expansive construction of Rule 17(c)").

In light of the fact that Defendant's subpoena is governed by the standard in *Nixon*, this Court finds that many of the requests in the subpoena are improper. In *Nixon*, the Court held that in order to require production of materials under Rule 17(c), the requesting party must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 699-700. In short, the requesting party must show "(1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700.

Under this standard, requests 4, 6, 7, 20, and 22 are impermissibly broad. For instance, a request of "any and all" documents smacks of a discovery-type fishing expedition, not a request for evidentiary documents. Additionally, Defendant has failed to show that he was not otherwise able to procure these documents, as it appears that he was provided with many or perhaps all responsive documents in the course of discovery in related civil arbitration. He received over 15,000 documents in discovery in related proceedings months ago and does not dispute that included among those are documents falling within the scope of the 17(c) subpoena. These requests are thus quashed.

At the hearing, the parties stipulated to change the wording for request 21 to Documents sufficient to show when and how the three source lists described in paragraph 19b of the indictment were created; who created them; and how many times (and to whom) were the source lists shown. The government's motion is thus denied as to the revised version of request 21.

Requests 15 and 16 are quashed, as Rule 17(c) is intended to provide a mechanism request existing documents, and does not require the party receiving the request to create documents not in existence. Additionally, as phrased, the requested information is not relevant to the charges in this case.

This Court will allow request 17, as it is specific, and Defendant contends that the documents requested will provide relevant information about Korn/Ferry's practices around maintaining confidentiality.

As to requests 18 and 19, Korn/Ferry contends it has already produced all non privileged documents to Defendant. As Korn/Ferry has not produced a detailed log of the privileged documents, however, it is ordered to do so by noon on Friday, March 29, 2013. Defendant must file any motion to compel documents listed in the privilege log by 5:00 p.m. on Monday, April 1.

## XI. WAIVER OF CONFLICT

Defendant's counsel Steven Gruel formerly represented a witness in this case, Paula Elmore. Judge Patel previously found that Defendant had knowingly waived any potential conflict. Docket No. 56, 70. Mr. Gruel will not be permitted to examine Ms. Elmore at trial.

This order disposes of Docket Nos. 299, 303, 304, 322, and 344.


IT IS SO ORDERED.


Dated: March 29, 2013

_____
EDWARD M. CHEN
United States District Judge