UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>DAVID NOSAL,<br><br>  Defendant.<br>_____/ | No. CR-08-0237 EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL**<br><br>**(Docket No. 355)** |

Defendant has filed a motion to compel production of certain documents from his former employer Korn/Ferry. Docket No. 355. Korn/Ferry claims that these documents are covered by work product privilege, and that some are also covered by attorney client privilege. The Court has reviewed the documents *in camera*, finds that they are subject to protection as opinion work product, and thus **DENIES** Defendant's motion.

## I. FACTUAL & PROCEDURAL HISTORY

On March 1, 2013, Magistrate Judge Cousins granted in part Defendant's motion for a subpoena duces tecum under Federal Rule of Criminal Procedure 17(c). Docket No. 308. Among the requests that Judge Cousins granted was Defendant's Request 2, which asked for:

> Copies of all previous statements or interviews of any anticipated government witnesses in this case, including but not limited to any video tapes, transcripts, declarations, letters or memoranda, regardless whether these statements were given to Korn/Ferry staff, Korn/Ferry's attorneys or Korn/Ferry's private investigators in this matter.

Docket No. 275-3 at 3 of 6. Judge Cousins found that the information requested was material to Defendant's defense, and ordered that Korn/Ferry produce them. Docket No. 308 at 9. The order provides that if any of the documents are privileged as work product or products of the attorney/client relationship, Korn/Ferry must produce a privilege log indicating the basis for withholding those documents. *Id.*

On March 29, 2013, Korn/Ferry produced a privilege log to Defendant that identified seven documents responsive to Request 2 that Korn/Ferry claimed were privileged. Docket No. 355 Ex. 1. These include internal interview notes regarding interviews with Michael Louie, Jacqueline Froehlich-L'Heureaux, Mark Jacobson, Becky Christian, and Gia Scinto which Korn/Ferry claims are covered by attorney work product privilege. The documents also include an internal interview memoranda regarding the interview of Mark Jacobson and an email summary concerning the interview of Gia Scinto. All documents were created by an attorney at O'Melveny & Meyers, Korn/Ferry's counsel. All were created in preparation for a related civil arbitration, a related civil court case, or both.

## II. **DISCUSSION**

Defendant argues that the privileges asserted by Korn/Ferry over the disputed documents are not absolute, and that he is entitled to production of the documents because of his substantial need for the materials. Additionally, he argues that Korn/Ferry has waived its privilege by providing the documents to the government or its board of directors. Finally, he argues that his Sixth Amendment right to confront witnesses trumps any privilege asserted by Korn/Ferry. Defendant requests an order compelling Korn/Ferry to produce the documents, or in the alternative, he requests that the Court conduct an *in camera* review to determine whether the documents are privileged.

1. <u>Work Product Privilege</u>

The work-product doctrine covers documents or materials prepared by an attorney or an attorney's agent in preparation for litigation, and protects such documents or materials from discovery. *United States v. Nobles*, 422 U.S. 225, 238-39 (1975). "To qualify for work-product

protection, documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative."[1] *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (quoting *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf)*, 357 F.3d 900, 907 (2004)). "Although the rule affords special protections for work-product that reveals an attorney's mental impressions and opinions, other work-product materials nonetheless may be ordered produced upon an adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship." *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989). So-called opinion work product may be discovered only where "mental impressions are *at issue* in a case and the need for the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).

Here, Defendant does not seem to dispute whether the documents in question come within the scope of the privilege, but argues that he has a substantial need for the documents and is otherwise unable to obtain the information they contain. He notes that all of the witnesses involved except Gia Scinto have a lawyer and a plea agreement with the government, and that they have thus been unavailable to him. He additionally notes that these witnesses themselves likely do not have the witness statements, and may be unable to recall what they said in the interviews, which took place in 2006. He argues that these documents may provide evidence that the witnesses have made inconsistent statements about Defendant's involvement in the witnesses' activities, and that he is otherwise unable to obtain information about such inconsistent statements.

---

[1] Defendant argues that the work product doctrine in criminal cases is limited to the materials discussed in Fed. R. Crim. P. 16(a)(2): "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" or "statements made by prospective government witnesses." Docket No. 355 at 5. He cites no case so limiting the doctrine in criminal cases, and in fact recognizes that the Supreme Court has applied the privilege more broadly in criminal cases. *Id.* (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975) ("Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.")).

3

The Supreme Court has held that interview notes and summaries prepared by attorneys are generally afforded the higher level of protection given to opinion work product. "Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorneys mental processes." *Upjohn Co. v. United States*, 449 U.S. 383, 399 (1981); *see also United States v. Clemens*, 793 F. Supp. 2d 236, 245 (D.D.C. 2011) ("even if it can be agreed upon that a collection of materials or statements constitute 'facts,' the collection of those facts itself might nonetheless reveal an attorney's thought processes and mental impressions of the case, thereby converting the information into 'opinion' work product."). In *Upjohn*, the Court held that, "such work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship." *Upjohn*, 449 U.S. 401-02. The Ninth Circuit has similarly recognized that interview notes are subject to a higher showing of necessity as opinion work product. *McKenzie v. McCormick*, 27 F.3d 1415, 1420 (9th Cir. 1994) (abrogated on other grounds as recognized in *Sivak v. Hardison*, 658 F.3d 898, 922 (9th Cir. 2011)).

In support of his argument that the requested documents are fact work product, Defendant cites to *United States v. Clemens*, which found the interview notes at issue in that case to be fact work product. 793 F. Supp. 2d 236, 250 (D.D.C. 2011). In *Clemens*, the court made specific factual findings as to why the interview notes and memoranda were not opinion work product. "Most importantly" to the court's decision, in that case, "the statements contained in the interview memoranda can be fairly attributed to the witnesses because" the attorneys who conducted the interviews made significant "efforts to ensure the accuracy of its memoranda." *Id.* at 254, 256-57. The court thus found that this converted the notes into statements adopted by the witnesses, rather than opinion work product reflecting the mental processes of the attorneys. Here, there is no indication that the witnesses adopted the attorney interview notes as their statements. Second, relying on D.C. Circuit case law, the court found that because the interviews had not been "of a general nature" and reflected little targeted preparation on the part of the attorneys, the interview notes provided less insight into the attorney's mental processes. *Id.* at 254, 248-50, 252-53. In addition to the fact that the D.C. Circuit case in question does not seem to have been adopted in the Ninth Circuit, there is no indication that the interviews in this case were wide ranging or that the

attorney conducting them did not engage in targeted preparation. Finally, and related to the second point, the court found that the fact that the government had participated actively in the interviews weighed in favor of finding that the notes were fact work product because it was unclear how much of the information in the interview notes was elicited in response to the attorney's questions rather than the questions of government representatives. *Id.* at 255-56. The notes thus gave even less insight into the attorney's thought processes. *Id.* Again, there is no indication of analogous circumstances here.

Given the clear Supreme Court guidance on this matter, the Court finds that all of the documents that are the subject of this motion are opinion work product. As such, in order to compel discovery, Defendant must demonstrate that the attorneys' mental impressions are at issue in this case, *and* that his need for the material is compelling. *Holmgren*, 976 F.2d at 577. Defendant has made no argument that he is able to meet this standard, and this Court finds that he has not. Even if Defendant's need for the materials could be described as compelling, the mental impressions of Korn/Ferry's attorneys are not at issue in this case. This Court thus finds that the documents are protected as opinion work product, and that Defendant has not met his burden in showing that he is entitled to the materials despite this privilege.

2. <u>Waiver</u>

Defendant argues that Korn/Ferry has waived any privilege in the documents because (1) the interview notes and memoranda "*may* have been disclosed to the government"; (2) Korn/Ferry "*may* have disclosed the witness interview notes to Korn/Ferry's Board of Directors";[2] and (3) Korn/Ferry "*may* have waived any privilege by using the witness' statements to its advantage in civil litigation." Docket No. 355 at 6-7 (emphasis added). Defendant has apparently been provided with "dozens of emails between O'Melveny and the government exchanging information demonstrating that

---

[2] Defendant's argument that disclosing the interview notes to the Korn/Ferry board of directors also appears to be based on a misreading of the case *S.E.C. v. Roberts*, 254 F.R.D. 371, 375 (N.D. Cal. 2008). In *Roberts*, the court found that the privileged nature of certain documents were lost when the law firm provided the documents to the board of directors of a company, but this was because the court explicitly found that the firm's client was a special committee of the board, and not the board itself. *Id.* at 383. There is no suggestion that this is the case here.

5

Korn/Ferry intended to share its witness communications with the government," but he points to no specific facts indicating that O'Melveny actually shared the information in question with the government. Likewise, he fails to specifically identify any facts indicating that the other two potential bases for waiver actually occurred. As Defendant points to no specific facts supporting a finding of waiver, this Court rejects his waiver argument as overly speculative.

### 3. Defendant's Sixth Amendment Rights

Finally, Defendant argues that even if the documents in question are covered by a privilege that has not been waived, his constitutional rights as a criminal defendant trump those privileges.

Defendant cites to no case were a criminal defendant was able to discover information that would otherwise be covered by attorney client/privilege or work product privilege. He cites only to dicta in a Seventh Circuit case, which suggests that under certain circumstances attorney/client privilege "might have to yield" where enforcing it would violate a criminal defendant's right of confrontation. *United States v. Rainone*, 32 F.3d 1203, 1206 (7th Cir. 1994). What Defendant omits from his brief, however, is that the court in the sentences immediately following the section he quotes expressed skepticism about this possibility: "But we have difficulty imagining an actual case in which the right to counsel and the attorney-client privilege would clash; they are fundamentally complementary rather than antagonistic." *Id.* The other cases he cites in support of this argument do not actually discuss the relationship between attorney/client privilege and a criminal defendant's Sixth Amendment rights. *See Clemens*, 793 F. Supp. 2d at 257-58 (discussing only attorney/client privilege); *United States v. Adamson*, 291 F.3d 606, 612 (9th Cir. 2002) (discussing only Sixth Amendment rights).

Defendant has thus cited no law supporting his argument that the privileged materials here must be disclosed in order to vindicate his Sixth Amendment rights. Accordingly, the Court rejects the suggestion that the documents must be produced on this basis.

//
//
//

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to compel production of the interview notes and memoranda responsive to Request 2 of his Rule 17(c) subpoena is **DENIED.**

This order disposes of Docket No. 355.

IT IS SO ORDERED.

Dated: April 5, 2013

_____
EDWARD M. CHEN
United States District Judge