1 STEVEN F. GRUEL (CSBN 213148)
  Attorney at Law
2 315 Montgomery Street, 9th Floor
  San Francisco, CA 94104
3 Telephone Number: (415) 989-1253
  Fax Number: (415) 449-3622
4 attystevengruel@sbcglobal.net

5 DENNIS P. RIORDAN (SBN 69320)
  DONALD M. HORGAN (SBN 121547)
6 RIORDAN & HORGAN
  523 Octavia Street
7 San Francisco, CA 94102
  Telephone Number: (415) 431-3472
8 Fax Number: (415) 552-2703
  dennis@riordan-horgan.com
9 Attorneys for David Nosal

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR-08-0237-EMC |
| Plaintiff, | ) **DEFENDANT NOSAL'S** <br> ) **SECOND SUPPLEMENTAL** <br> ) **MEMORANDUM ON RESTITUTION** |
| vs. | ) |
| DAVID NOSAL, et al., | ) |
| Defendants. | ) |

**TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

THE *PAROLINE* DECISION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.      Response Costs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.      Employee Participation in the Prosecution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        C.      Attorney Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        D.      Difficulty of Determination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## CASES

*Bagley v. Lumpkin,*
98 F.2d 1297 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Baker v. D.C. Public Schools,*
823 F. Supp. 2d 1 (D.D.C. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Clark v. District of Columbia,*
674 F. Supp. 2d 149 (D.D.C. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Coleman v. District of Columbia,*
2007 WL 1307834. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Dickens v. Friendship-Edison P.C.S.,*
724 F. Supp. 2d 113 (D.D.C. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hensley v. Eckerhardt,*
461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Holbrook v. District of Columbia,*
305 F. Supp. 2d 41 (D.D.C. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*National Association of Concerned Veterans v. Secretary of Defense,*
675 F.2d 1319 (D.C. Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Paroline v. United States,*
No. 12-8561, 572 U.S. __ (April 23, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 7, 11

*Role Models American., Incorporated v. Brownlee,*
353 F.3d 962 (D.C. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Singh v. Prunty,*
142 F.3d 1157 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Amato,*
540 F.3d 153 (2d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Bagley,*
473 U.S. 667 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Batista,*
575 F.3d 226 (2d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Brock-Davis,*
504 F.3d 991 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*United States v. Cliatt,*
338 F.3d 1089 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Table of Authorities continued**

*United States v. De La Fuente,*
353 F.3d 766 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Gamma Tech Industries, Inc.,*
265 F.3d 917 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Gordon,*
393 F.3d 1044 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Havens,*
424 F.3d 535 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Hayward,*
359 F.3d 631 (3d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Kennedy,*
643 F. 3d (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*United States v. May,*
706 F.3d 1209 (9th Cir.2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Papagno,*
639 F.3d 1093 (D.C. Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 8, 9

*United States v. Peterson,*
538 F.3d 1064 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Phillips,*
367 F.3d 846 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Rizk,*
660 F.3d 1125 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Rodrigues,*
229 F.3d 842 (9th Cir.2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Sedaghaty,*
728 F.3d 885 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Stoddard,*
150 F.3d 1140 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Waknine,*
543 F.3d 546 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Yeung,*
672 F.3d 594 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wilkins v. Bowersox,*
933 F. Supp. 1496 (W.D. Mo. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Table of Authorities continued**

## STATUTES

18 U.S.C. § 2259.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3663A(b)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

18 U.S.C. § 3664(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**INTRODUCTION**

On November 12, 2013, the government submitted a memorandum [Nov. Memo] stating its position on the issues of loss and restitution that this Court would be called upon to determine in the course of post-trial proceedings in this matter. That memorandum asserted that "the Court should find that the defendant caused a loss of $592,295 for purposes of calculating the Guidelines in this case. The Court should also find that the proper calculation of the restitution owed to Korn/Ferry is $1,392,498.70." (*Id*. at 20)

The proposed loss calculation by the government of $592,295 included $434,925 as Korn/Ferry International's [KFI] claimed development costs for the source lists downloaded by Mr. Nosal's alleged conspirators (*id.* at 6-12), and $157, 370 as the cost incurred by KFI–and specifically by its employees Peter Dunn, KFI's general counsel, and IT specialists Dan Demeter and Marlene Briski–in conducting an internal investigation of the downloading of its source lists. (*Id.* at 12-15.) At Mr. Nosal's sentencing hearing on January 8th, the Court set the development costs of KFI which were legally cognizable under the Sentencing Guidelines at $19,507.88 and its response costs to be $27,400, for a total loss figure of $46,908.88 (Order of 1/13/14 at 17.) The response costs were based entirely on the estimates for time spent by Ms. Briski in the internal investigation, as the Court ruled the submissions as to Mr. Dunn and Mr. Demeter were too vague to merit inclusion in the loss determination. In addition to a prison sentence of a year and a day, the Court imposed a fine of $60,000.

The restitution figure of $1,392,498.70 initially proposed by the government consisted of three elements: (a) the same $157,370 submitted as the response costs on the loss calculation (Nov. Memo, at 18) ; (b) $286,425 "for the time its employees spent responding to government requests for information, meeting with investigators, and attending the trial.... This figure represents time expended by Dunn, Nahas, and Briski (who all testified at trial), as well as by Demeter" (*id*.); and (c) $948,703.70, "the attorneys' fees incurred in connection with the criminal case," i.e., the fees KFI paid to the law firm of O'Melveny and Myers [OMM]. (*Id.*) Since the government submitted its November memorandum, KFI has added over $106,000 to its attorneys fees demand for recent OMM billing on sentencing and restitution issues.  Its

restitution claim thus mounted to nearly a million and a half dollars, over thirty times greater than the loss amount fixed by the Court.

Defendant Nosal has been informed that the government has trimmed that request to $1,240,024.65, comprised of (1) $27,400 for response costs; (2) $247,695 for the value of Korn/Ferry employee time spent responding to government requests for information, meeting with investigators, and attending the trial; and (3) $964,929.65 in attorneys' fees, still more than twenty five times in excess of the actual loss suffered by KFI.

As to each of these three components of the KFI's restitution claim, the government bears the burden of proving by a preponderance of the evidence "the amount of the loss sustained by a victim as a result of" the defendant's crime. 18 U. S. C. §3664(e). It cannot possibly meet that burden for multiple reasons, among them the Supreme Court's decision last week in the case of *Paroline v. United States*, No. 12-8561, 572 U.S. __ (April 23, 2014).

## THE *PAROLINE* DECISION

*Paroline* deals with a restitution statute, the Violence Against Women Act of 1994(18 U.S.C. § 2259), different than, but similar to, MVRA.  The basic statutory language is similar in the two statutes.  The *Paroline* Court held that the restitution statute only covers "those losses proximately caused by the defendant's offense conduct." (Slip op. at 6.)  In so holding, the Supreme Court cited with approval the 9th Circuit's prior ruling in *United States* v. *Kennedy*, 643 F. 3d 1251 (9th Cir. 2011) (*Id.*)

The Court then explained that, as in torts, causation has two components.  First, there must be but-for causation—i.e., the former event caused the latter.  Second, and more importantly, there must be proximate causation: "there must be some direct relation between the injury asserted and the injurious conduct alleged." (Slip op. at 7.)  The latter requirement is "more restrictive than a requirement of factual cause alone. (*Id*. at 8.)  It does not include losses that are "attenuated" from the injurious conduct. (*Id.*)

But the Court went on to explain that, although borrowed in part from tort law, the proximate cause requirement must be applied in a narrower fashion in criminal law.  Although general principles of causation might be similar across different contexts, restitution statutes

should be interpreted more restrictively. "Aside from the manifest procedural differences between criminal sentencing and civil tort lawsuits, restitution serves purposes that differ from (though they overlap with) the purposes of tort law." (*Id*. at 16.) Applying restitution statutes in a very broad manner could also run afoul of the Excessive Fines Clause of the 8th Amendment. To avoid such constitutional concerns, the statutes should be interpreted restrictively. (*Id*. at 18-19.) Most importantly, the majority held that

> the statute states a strong restitutionary purpose; but that purpose cannot be twisted into a license to hold a defendant liable for an amount drastically out of proportion to his own individual causal relation to the victim's losses.

(*Id.* at 24.)

The *Paroline* decision is doubly important because the government has relied, on Second Circuit cases such as *United States v. Amato*, 540 F.3d 153, 159-62 (2d Cir. 2008)  It will no doubt rely on a recent district court decision out of the Second Circuit*, United States v. Gupta*. But those cases are inapplicable because the Second Circuit has parted from other circuits, and it has explicitly rejected Ninth Circuit case law that all expenses must be directly and foreseeably caused by the offense. *See Amato*, 540 F.3d at 162; *see also United States v. Batista*, 575 F.3d 226, 233 n.6 (2d Cir. 2009) ("We declined to follow several decisions from our sister circuits holding that attorneys' fees could not be included in restitution orders."). Most importantly, the Second Circuit's basic principle -- that there is no direct or foreseeable requirement -- is contrary to Ninth Circuit law, and was likely overruled by *Paroline.*

Defendant Nosal has previously argued that a restitution award may not exceed the amount of actual loss calculated for guideline purposes, citing *United States v. Stoddard*, 150 F.3d 1140 (9th Cir. 1988); *United States v. Yeung*, 672 F.3d 594, 602 (9th Cir. 2012) (citing *United States v. Rizk*, 660 F.3d 1125, 1137 (9th Cir. 2011)). Whether or not that principle applies in the present context, it is clear that "a defendant [cannot be held] liable for an amount drastically out of proportion to his own individual causal relation to the victim's losses" without running afoul of the Excessive Fines Clause. *Paroline*, slip op. at 8-19, 24. Nosal submits that the present restitution demand of KFI that, as noted above, exceeds its actual loss by twenty five

times, must be rejected because of its size alone. Nosal submits that a fair and legal restitution award in this case cannot exceed $100,000, an amount somewhat greater than twice the actual loss amount, for the reasons that follow.

### A. Response Costs

Given that this Court disallowed $126,970 of the KFI's proposed response costs–i.e., the proffered billing of Dunn and Demeter for their role in KFI's internal investigation--as insufficiently substantiated, KFI's proposed response costs must drop by at least that amount. The government apparently now agrees with that position.

Furthermore, it has been held that internal investigations, particularly "an internal investigation that *preceded* the criminal investigation," are not covered by the MVRA. *United States v. Papagno*, 639 F.3d 1093, 1098 (D.C. Cir. 2011). *Papagno* noted that Congress had explicitly acted to cover internal investigations for identity theft crimes, but not for crimes of fraud. *Id*. It thus concluded that subdivision (b)(4) only covers costs when a victim is actively "taking part" in a prosecution. *Id*. at 1098. Under that holding, none of the $157,370 in proposed response costs, including Briski's allowed loss total of $27,400, qualifies for restitution under the MVRA.

### B. Employee Participation in the Prosecution

The government's full position on this second category of claimed compensation is stated as follows:

> Korn/Ferry is entitled to restitution for the time its employees spent responding to government requests for information, meeting with investigators, and attending the trial. *See* 18 U.S.C. § 3663A(b)(4) (authorizing restitution for "transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense"). As set forth in more detail in the declarations of Peter Dunn, Caroline Nahas, Marlene Briski, and Marat Fookson, the total value of this time from July 2005 to the present is $286,425. This figure represents time expended by Dunn, Nahas, and Briski (who all testified at trial), as well as by Demeter. A breakdown of this time is set forth in Exhibit 4, which the United States requests be filed under seal.

(Nov. Memo. at 18.)

To begin, Exhibit 4, a chart compiled by Marat Fookson, contains gross numbers of Nosal-related hours and compensation by year for Dunn, Nahas, Briski, and Demeter, without any breakdown by task. For the reasons the Court cited in excluding the response time claims of Dunn and Demeter from its loss calculation, Exhibit 4 is worthless in terms of providing the greater detail required to support a restitution claim. Similarly, the declarations of Briski, Nahas, and Dunn provide no meaningful detail as to the date and time of tasks for which KFI seeks compensation under the restitution statutes.

It must be emphasized that most of the work done by KFI in uncovering evidence of the charged offenses was done before the government initiated its investigation by raiding Mr. Nosal's office on August 1, 2005. All of the downloads from Searcher accomplished by Mr. Nosal's conspirators had been documented and conveyed to the government before the raid. Further forensic analysis of those downloads and documents was conducted by the FBI rather than KFI personnel. If a fair figure were to be awarded for the time spent by KFI in assisting the government in dealing with KFI data, it should not exceed the response time figure of $ $27,400.

The absence of detail as to precisely who did what and when in terms of employee participation in the government's investigation and prosecution becomes of particular significance because of a fundamental issue, apparently of first impression in this Circuit, created by KFI's claim: its attempt to collect restitution for the time its employees spent preparing to testify and testifying as government witnesses. Obviously, as a general rule, other than the minimal daily witness fees provided by statute, lay witnesses called by either party are not paid for their time preparing and testifying; they are not compensated for lost wages; and they are not entitled to any form of restitution. Victims can get lost wages for time testifying and assisting; other witnesses cannot. A "court cannot order restitution without statutory authorization." *United States v. Brock–Davis*, 504 F.3d 991, 996 (9th Cir. 2007)**.** Michael Louie could make no claim for restitution for his time preparing to testify, and testifying, as a government witness, nor could Becky Christiansen, Mark Jacobson, or Jacqueline Froelich-l'Heureaux.

The same would be true for Dunn, Nahas, and Briski in their individual capacities, as none were victims under the MVRA. But KFI claims the right to tens of thousands, if not hundreds of thousands, of dollars in restitution because it paid these employees for the time they spent preparing their testimony with the government and testifying in court.

One of two things are true. Under one scenario, KFI's corporate policies would dictate that KFI would pay any employee his or her normal compensation for time spent fulfilling duties, whether serving as a juror or responding to a government subpoena calling for that employee to review documents, prepare testimony, and appear in court to give testimony. Under that policy, Dunn, Nahas, and Briski would have received their ordinary wages if they had been subpoenaed as a witness in a case that involved neither KFI or Nosal, and KFI could not have obtained repayment from any third party for those wages. In this scenario, it cannot be said that the fact that the three received compensation for their witness preparation and court time was a direct result of Nosal's charged offenses, and their wages are not recoverable as restitution.

Under a second scenario, KFI personnel would not be compensated for taking time off to respond to a government subpoena to testify. If that was the case here, KFI compensated the three KFI witnesses specifically for serving as witnesses on behalf of the government, and the interests of KFI itself, in the Nosal prosecution.

Such pay for testimony might be illegal: e.g., in an assault case where the victim has a pending civil action, could the victim legally compensate a lay witness for lost wages to ensure that the witness would testify in the criminal trial? If not illegal, surely such payments would be a proper subject for cross-examination on the witnesses's bias and interest in his or her testimony. Undisclosed payments to government witnesses constitutes a *Brady/Giglio* violation, that can require a new trial. *Singh v. Prunty*, 142 F.3d 1157, 1162 (9th Cir. 1998); *Bagley v. Lumpkin*, 798 F.2d 1297 (9th Cir. 1986); *see also United States v. Bagley*, 473 U.S. 667, 683-84 (1985). Just a few months ago the Ninth Circuit reversed a conviction on this very basis. It said: "Payments to a government witness are no small thing." *United States v. Sedaghaty*, 728 F.3d 885, 901 (9th Cir. 2013). And the amount of compensation at issue here–at rates of hundreds of dollars an hour–also is "no small thing."

In short, if KFI now receives "restitution" for the wages it paid its employees during the time they spent preparing to serve and serving as government witnesses, on the theory that those payments to employees were compensation for serving as government witnesses in this particular case, that "restitution" will raise a major question about the constitutional regularity of the government's case. Nosal has been unable to locate any case authority deeming such payments compensable as restitution under the MVRA. Moreover, this sort of claim unquestionably counts as consequential "but for" costs, and as both the Ninth Circuit and other circuits have repeatedly held, the restitution statutes do not cover mere consequential damages; a more direct connection to the offense of conviction is required. *United States v. Rodrigues*, 229 F.3d 842, 845 (9th Cir.2000); *United States v. Havens*, 424 F.3d 535, 538 (7th Cir. 2005). That is the thrust of *Paroline*'s proximate cause analysis as well.

The "testimonial' component of KFI's restitution claim is highly controversial, and the government would be wise to forego it.

### C. Attorney Fees

The MRVA imposes a general requirement for restitution of necessity, foreseeability, and reasonableness. *See Papagno*, 639 F.3d at 1100 ("The statute here authorizes restitution only for 'necessary' costs."); *see also United States v. De La Fuente*, 353 F.3d 766, 773 (9th Cir. 2003) (allowing restitution where costs were a "necessary and foreseeable result of [the defendant's] offense conduct"); *United States v. Cliatt*, 338 F.3d 1089, 1091 (9th Cir. 2003) (stating that the statute covers "necessary" costs resulting from the offense); *United States v. Phillips*, 367 F.3d 846, 863 (9th Cir. 2004) (stating that costs must be "incurred as a 'direct and foreseeable result' of the defendant's wrongful conduct.). "It is clear from our cases that the phrase "directly resulting" means that the conduct underlying the offense of conviction must have caused a loss for which a court may order restitution, but the loss cannot be too far removed from that conduct." *United States v. Gamma Tech Industries, Inc.*, 265 F.3d 917, 928 (9th Cir. 2001).

Expenses must be reasonable. "The causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable." *United States v. Peterson*, 538 F.3d 1064, 1075 (quoting *Gamma Tech Indus.*, 265 F.3d at 928). And again, the MRVA does not provide

compensation for consequential, as opposed to actual, damages. *See, e.g., Brock-Davis*, 504 F.3d at 1002("[T]he district court erred by ordering restitution for consequential damages . . . ."); *accord United States v. May*, 706 F.3d 1209, 1214-15 (9th Cir.2013); *see also Papagno*, 639 F.3d at 1100 (stating that the MVRA "is not a consequential damages statute").

*Paroline* blessed these principles in speaking of the requirement that compensable restitution arise from "direct and "foreseeable results" of the commitment offense. Slip op. at 12.

Applying these general standards, the Ninth Circuit has held that attorney fees "may be recoverable" as restitution if they are "a 'direct and foreseeable result' of the defendant's wrongful conduct". *United States v. Gordon*, 393 F.3d 1044, 1057 (9th Cir. 2004); *see also id*. (stating that the MVRA covers "reasonable costs") (quoting *United States v. Hayward*, 359 F.3d 631, 642 (3d Cir. 2004)). And as is true of all claims for restitution under 18 U.S.C. § 3663A(b)(4), compensation for attorney fees is limited to a victim's "*participation* in the investigation or prosecution of the offense." (Emphasis added; see also *Papagno*, 639 F.3d at 1098 [Subdivision (b)(4) only covers costs when a victim is actively "taking part" in a prosecution. ])

Before descending to particulars, the extraordinarily disproportionate size of the attorney fees demanded by KFI in this case exposes its unreasonableness. The Court computed the legally cognizable loss to KFI at $46,908.88. Based on the nature of the monetary offense, the Court imposed on Nosal a fine of $60,000. The combined total of the loss figure and the fine imposed thus fell under $100,000. Yet KFI is now claiming that it is entitled to restitution in an amount at least twelve times in excess of the combined loss and fine amount. In sum, KFI seeks to employ the restitution process to impose a far more crushing economic burden on its former employee and present competitor than the actual loss KFI suffered or the financial penalty the Court imposed on Nosal at sentencing.

Furthermore, the loss figure in this case for development costs of between $19,000 and $20,000 was hypothetical rather than real, in the sense that the source lists at issue here were returned to KFI in the summer of 2005 without any showing that their downloading had in any way diminished KFI's earnings, nor was any damage done to the computers or data base from

which the lists were downloaded. Thus the Court determined the *real* financial loss to KFI, through the time when the charged offenses were detected and terminated, to have been $27,400 (the time spent by Briski on the internal investigation).

Whether one puts the real loss here at $27,400 or $46,908.88, no victim who suffered that amount of loss would then expend over a million dollars in attorneys fees "connected with" that offense absent an ulterior motive for doing so. Indeed, OMM claims that it expended over 1700 attorney hours–about forty two weeks at forty hours of attorney time a week-on a case that involved a week's worth of testimony. Here, the motivation for such an extravagant expenditure of attorney time is obvious: spending a million dollars in an effort to ensure that the government obtained a conviction in its prosecution of Nosal was a bargain. KFI's civil case against Nosal has been placed on hold awaiting the outcome of the criminal prosecution. The government did the heavy lifting in obtaining a verdict that, should it survive appeal, can be used to conclusively establish liability in KFI's civil suit, avoiding KFI's expending millions more in attorney fees in the civil context. But, as the government concedes, KFI's expenditure of attorneys fees for the purpose of advancing its civil agenda cannot qualify as *necessary* and *reasonable* costs compensable under MRVA's restitution provisions. Indeed, in its November memo, the government described the attorneys fees as "connected with" the Nosal prosecution, not incurred by KFI's "participation" in the prosecution, as the law requires. (*Id.* at 18) At best, such expenditures constitute consequential damages non-compensable under MVRA. The place to seek compensation for them, if any is available, is the pending civil litigation between KFI and Nosal.

Under the above cited case law, attorneys fees are compensable only if they are expended on activities and conduct which *the government* requires of the victim in order to successfully prosecute its case against the defendant. Thus, if the government requires from the victim data on loss amount that necessitates a reasonable amount of attorney time, fees for that work may be compensable under the *Gordon* standard. But "[a] prosecutor acts in a quasi-judicial capacity, and he and those associated with him should represent public justice and stand indifferent as between the accused and any private interest. " *Wilkins v. Bowersox*, 933 F. Supp. 1496, 1524

9

1  (W.D. Mo. 1996). A prosecutor thus cannot permit his presentation of a case be influenced by
2  the private interests of an alleged victim. nd a victim cannot effectively add to the punishment of
3  a defendant by lavishly spending on attorney services the government has not requested and does
4  not need.

5  The government's latest pleading in support of KFI's restitution request will contain no
6  assertion that, in order to competently present their case, its prosecutors needed OMM attorneys
7  to review the government's pleadings, to draft mock cross-examinations of the government
8  witnesses or of defense witnesses who were never called, to read press clippings about the
9  verdict returned by the jury, and to analyze confidentiality issues surrounding *civil* arbitration
10 proceedings. Yet OMM billed KFI for all of these activities and KFI now seeks restitution from
11 Nosal for those billings.

12 Defendant Nosal now challenges over ninety five percent of OMM billing contained in
13 the 1,200 line items submitted in the government's Excel spread sheets summarizing the
14 hundreds of pages of OMM's billing invoices. In addition to the fact that almost the entirety of
15 OMM's billing was generated by KFI's objective of furthering its interests in civil litigation, its
16 billing must be drastically reduced for several additional and independent reasons.

17 First, as explained at length in the accompanying declaration of attorney John O'Connor,
18 an expert in issues involving attorney fees, OMM's premium fee structure cannot be justified in
19 the context of attorney participation in a criminal case. The tasks for which OMM billed did not
20 require the attention of top billing partners. As O'Connor demonstrates, the maximum reasonable
21 hourly rate for the legal services here is $250 an hour.

22 Furthermore, the sort of staffing common in major corporate civil litigation, with multiple
23 attorneys discussing and reviewing each other's work, cannot be considered a "reasonable"
24 expenditure under MRVA.[1] Moreover, it is unquestionably the government's burden to prove

---

[1] *Baker v. D.C. Public Schools*, 823 F. Supp. 2d 1, 8 (D.D.C. 2011) ("The number of hours that an attorney expends on a task may be deemed excessive if it involves 'duplication of effort.' [Citation]"); *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 972 (D.C. Cir. 2004) (reducing fee award for duplicative work, including charges by two individuals for filing the

the specific amount of a compensable financial expenditure. 18 U.S.C. § 3664(e); *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008). That burden requires detail in the description of attorney services sufficient for this Court to make an assessment of the necessity and reasonableness of an expenditure for which restitution is claimed.[2] When, for example, KFI and OMM submit a line item asserting an expenditure of $10,000 for the time of two attorneys to meet with AUSA Waldinger in San Francisco on April 6, 2008, two years before Mr. Nosal's indictment, without any explanation of the purpose for the meeting, much less its necessity, reasonableness, and foreseeability, they have woefully failed to provide adequate justification for compensating that claim under MRVA.

Additionally, as *Paroline* makes clear, because Nosal's restitution responsibility is limited "to his own individual causal relation to the victim's losses" (slip op. at 24), he could not be held liable for any attorney fees related to the prosecution of his three alleged conspirators.

---

same brief)' *Hensley v. Eckerhardt*, 461 U.S. 424, 434 (1983) (hours that are "excessive, redundant, or otherwise unnecessary" should be excluded from a fee petition. The court should also exclude hours "not 'reasonably expended' . . . [c]ases may be overstaffed").

[2] *Baker,* 823 F. Supp. 2d 1, at 5-8 (descriptions such as "[r]eviewed documents from Spingarn" and "[t]eleconference with mother" "are unintelligible and therefore inadequate because they prevent the court from being able to make an independent determination of whether the hours expended are reasonable"); *Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 124-25 (D.D.C. 2010) (holding that entries such as "conference with parent" and "telephone calls to DCPS" were vague, and reducing the overall fee award by ten percent); *Clark v. District of Columbia*, 674 F. Supp. 2d 149, 158-59 (D.D.C. 2009) (holding that time entries such as "preparation for hearing" or "preparation for school visit" were too vague, and reducing overall fee award by twenty-five percent); *Coleman v. District of Columbia*, 2007 WL 1307834, at *7 (D.D.C. 2007) (holding that entries such as "conference with co-counsel" lacked sufficient detail); *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004) (internal quotation marks and citations omitted) ("plaintiff bears the burden of demonstrating that the number of hours that its counsel has spent on a particular task is reasonable", which plaintiff must satisfy "by submitting an invoice that is sufficiently detailed in order to permit the [ ] Court to make an independent determination of whether or not the hours claims are justified"); *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (a fee application must provide sufficient detail to allow the court to make an independent determination of whether the charges are reasonable).

For example, tens of thousands of dollars of OMM's billing relates to periods prior to 2008 when alleged conspirators Jacobson and Froelich L'Heureaux, but not Nosal, were under indictment. Nor can KFI collect claim restitution work related to charged offenses or other issues as to which Nosal, rather than the government, prevailed. Seventy per cent of the charges brought in the original indictment against Mr. Nosal were dismissed as lacking a basis in law, including the lynchpin mail fraud charges based on the non-compete covenant in Mr. Nosal's separation agreement. Under Supreme Court law, legal services rendered relative to those charges are not recoverable, even though those charges may have been "interrelated [to the remaining charges], nonfrivolous, and raised in good faith."[3] *Hensley*, 461 U.S. at 434.

In addition to the $948,703.70 claimed as attorney fees in its November pleading, the government has informed Nosal's counsel that KFI now has requested an additional $106,000 (and change) in attorney costs between October 2013 through January of 2014. Much of that recent time was spent generating proposed figures on loss, over 95 percent of which this Court rejected at January's sentencing hearing as impermissibly inflated. The latest invoices from OMM and KFI for October through January include items such as "analyze press coverage" of Nosal's sentencing, at a rate of nine hundred dollars an hour, and OMM attorneys reviewing and analyzing the government's sentencing memoranda *after* those memoranda had been filed in November. Nosal challenges the supplemental claims on all of the grounds asserted above.

Defendant Nosal has preserved for appeal his claim that MRVA was not intended to provide compensation for any attorney fees incurred by a major corporation. With that issue preserved, he has proffered the very detailed declaration of fees expert O'Connor on the issues of

---

[3] *See also id.* at 435: "[W]ork on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.' . . . The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . . the most critical factor is the degree of success obtained." *Id.* at 436.)

which of the OMM attorney hours may be deemed necessary and compensable under MRVA, as well as the reasonable rate at which they should be compensated. As stated in his accompanying declaration, O'Connor puts the number of hours at 181–more than four times the length of the trial testimony in this case--and the hourly rate at $250 an hour, for a total of compensable attorney fees of $45,250.00.

### D. Difficulty of Determination

Nosal reiterates three points made in his previous briefing. First, the MVRA states that no restitution should be ordered where it would require "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." § 3663A(c)(3)(B). That provision applies in this case. Even after protracted briefing and argument, it is simply impossible for the Court to reach an accurate determination as to the specific tasks performed by KFI's employees and lawyers, and the time spent on those tasks, thus defeating any attempt to determine compensable restitution.

Second, related to the underlying contract dispute, Korn-Ferry has already withheld over a million dollars in consulting fees owed to Mr. Nosal. The purpose of restitution is to make a victim whole, but if Korn-Ferry has already been made whole by retaining those fees, there is no additional purpose for a restitution order. Moreover, there is no practicable way for this Court to determine how much of that reimbursement should count as an offset to any restitution order without wading into the thicket of the civil contract dispute. Suffice it to say, calculating a proper restitution order in this case would be difficult, complex, time consuming, and will require an evidentiary hearing.

Finally, as noted in prior briefing, Congress passed the MVRA to make victims whole, and it passed the particular provision at issue here to protect women who were victims of violent sex offenses. It did so because these women, without a restitution remedy, would have no means of recouping the losses associated with their required participation in the trials of their assailants. KFI has the resources needed to vigorously pursue its civil remedies, and it fully intends to do so. No injustice will occur if KFI is relegated to those civil remedies.

**CONCLUSION**

As a result of the government's failure to carry its burden, and the complexity of an accurate calculation, no restitution should be ordered. If ordered, restitution should not exceed the Guidelines loss amount. In any case, the restitution should not exceed double the amount of the Guidelines loss determination.

Dated: April 28, 2014

Respectfully submitted,

DENNIS P. RIORDAN
DONALD M. HORGAN
RIORDAN & HORGAN

 /s/ Dennis P. Riordan
DENNIS P. RIORDAN

Attorney for Defendant
DAVID NOSAL