# EXHIBIT 1

EXHIBIT 1

```
                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

              BEFORE THE HONORABLE, EDWARD M. CHEN, JUDGE


---------------------------)
                           )
UNITED STATES OF AMERICA,  )
                           )
              Plaintiff,   )
                           )
     v.                    )      Case No. CR 08-0237 EMC
                           )
DAVID NOSAL,               )
                           )
              Defendant.   )      San Francisco, California
                           )      Wednesday, October 9, 2013
---------------------------)            (31 pages)


                    TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:            MELINDA L. HAAG, Esq.
                          United States Attorney
                          450 Golden Gate Avenue
                          San Francisco, California 94102
                      BY: KYLE F. WALDINGER
                          MATTHEW A. PARRELLA
                          Assistant United States Attorneys

For Defendant:            Riordan & Horgan
                          523 Octavia Street
                          San Francisco, California 94102
                      BY: DENNIS P. RIORDAN


Also Present:             Constance Cook
                          U.S. Probation
```

```
1    Wednesday, October 9, 2013
2                                                         (3:42 p.m.)
3              (In open court, defendant present)
4         DEPUTY CLERK:  Calling Case Cr. 08-0237, USA vs.
5    David Nosal.
6         Counsel, please come to the podium and state your name for
7    the record.
8         MR. WALDINGER:  Kyle Waldinger on behalf of the
9    United States.  I'm joined today by Matthew Parrella.
10        THE COURT:  Thank you, Mr. Waldinger.
11        MR. RIORDAN:  Good afternoon, your Honor.  Dennis
12   Riordan for defendant Nosal, who's present in court today.
13        THE COURT:  All right.  Thank you, Mr. Riordan.
14      Good afternoon, Mr. Nosal.
15        MS. COOK:  Good afternoon, your Honor.  Constance
16   Cook from U.S. Probation.
17        THE COURT:  All right.  Thank you, Miss Cook.
18      Before I forgot, I have an administrative matter here:
19   There's a bond that's been stipulated to with respect to
20   Mr. Nosal's travel; is that right?
21        MR. RIORDAN:  Yes, your Honor.  There's an agreement
22   that at the close of the hearing, a bond will be raised, an
23   unsecured bond, of $500,000, and he'll be permitted to travel
24   in the next week.
25        THE COURT:  And the government agrees?
```

1       **MR. WALDINGER:** Yes, the government agrees. And the
2  reason the government asks for that, he'll now be in a
3  different position than post-sentencing, so we're asking that
4  it be raised from 100,000 unsecured to 500, all other terms of
5  release to remain the same.
6       **THE COURT:** A stipulation permitting travel, which
7  you've all agreed to, correct?
8       **MR. WALDINGER:** That's correct, your Honor.
9       **MR. RIORDAN:** Yes, your Honor.
10      **THE COURT:** I'll sign that stipulation and the new
11 bond, and then let's proceed with sentencing.
12     We're on for sentencing this afternoon in Mr. Nosal's
13 case. Just briefly, to review the procedural history in a
14 nutshell, on April 1st, 2008, a 19-count indictment was filed
15 in this court charging Mr. Nosal and Miss Christian with
16 various violations including conspiracy to misappropriate
17 trade secrets as well as gaining unauthorized access to a
18 protected computer. On June 28th of that year, a 20-count
19 superseding indictment was filed charging those defendants
20 with similar counts. And then on February 18th of this year,
21 a six-count second superseding indictment was filed in this
22 court charging the defendant with a total of six counts along
23 the lines that I have just recited, and it was on that basis
24 that trial was held in this case and, as we all know, a jury
25 trial was held and a guilty verdict was returned on

1   April 24th, and judgment and sentencing were set for today's
2   date.
3       I have reviewed the presentence report, the two memoranda
4   filed each, by the government as well as by defendant,
5   including various replies. I have also reviewed the stack of
6   letters that were submitted in support of Mr. Nosal. And so
7   let me make sure I haven't missed anything.
8       Is there anything else that has been filed in this matter?
9           **MR. WALDINGER:** That's all that's been filed, your
10  Honor. I do want to let the Court know at the beginning that
11  Miss Marlene Briski is here on behalf of Korn/Ferry to speak
12  for the victim, whenever your Honor would like to hear from
13  her.
14          **THE COURT:** All right.
15          **MR. RIORDAN:** In that regard, your Honor, we were
16  planning to have a representative of Nosal Partners give a
17  brief statement on behalf of the employees at Nosal Partners.
18          **THE COURT:** Before we do that, let me ask if there
19  are any corrections to the presentence report. I understand
20  there's an issue about the loss calculation, which is a major
21  issue here, but besides that, are there any other factual or
22  other errors that need to be corrected?
23          **MR. WALDINGER:** Not outside of the dispute the
24  parties have regarding loss, to my knowledge, your Honor.
25          **THE COURT:** All right. Well, maybe I should hear

1   from those who want to speak first, and then we can talk about
2   the loss question, which is front and center.
3           **MR. WALDINGER:** Okay.
4           **THE COURT:** So --
5           **MR. WALDINGER:** Miss Briski.
6           **THE COURT:** If Miss Briski would like to say
7   something to the Court, I certainly will hear it.
8       Good afternoon, Miss Briski.
9           **MS. BRISKI:** Good afternoon, your Honor.
10      Your Honor, I was a witness in the trial we are speaking
11  of today. I've been an employee of Korn/Ferry for over 30
12  years with most of my time being spent working in the
13  information technology group. On behalf of Korn/Ferry, I'd
14  like to make a few comments as you consider an appropriate
15  sentence.
16      For eight and a half years, the conduct of David Nosal,
17  which was the subject of this trial, had a direct impact on my
18  life, the lives of many other employees at Korn/Ferry, and it
19  had serious consequences for the broader company as well. Due
20  to David's bad choices, which were outlined during the trial,
21  thousands of work hours were deferred away from productive
22  activity. Instead, those hours were spent trying to
23  understand what David and his colleagues had done to penetrate
24  our systems, what information they had removed, and to try to
25  assess the damage they had done. Korn/Ferry's information

1   technology team is very lean.  Throughout all of those many,
2   many months, we still had our normal jobs to do and a business
3   to run.  Much of the work that was done was done after hours
4   or on weekends.  And, your Honor, after the FBI involvement,
5   there were thousands of hours spent gathering documents and
6   information to disprove meritless allegations that David made
7   against Korn/Ferry to the government in an attempt to distract
8   attention away from his criminal misconduct.
9       I also know that this consumed several million dollars in
10  investigative and legal costs.  The personal and professional
11  burdens he imposed on us were extreme.  As a senior executive
12  at Korn/Ferry, David was in a position of significant
13  authority and trust in regards to both Korn/Ferry's trade
14  secrets and its employees, David not only abused that position
15  in regards to Korn/Ferry, but also as to all of Korn/Ferry's
16  employees.
17       Korn/Ferry spends tens of millions of dollars every year
18  developing and enhancing its server and other intellectual
19  property such as a confidential and proprietary client source
20  list, which were a key point in this trial.  Throughout this
21  litigation, David has attempted to belittle and attack
22  Korn/Ferry's server database, claiming it contains information
23  that is readily available on the Internet and is of no
24  significant value.  That is absolutely not so.  The sources
25  that David stole from Korn/Ferry do not exist anywhere else in

1  the world.  They were developed confidentially on behalf of a
2  client who paid us for the work, and they contain individuals
3  who were considered for specific positions in a specific
4  industry, and to a search executive conducting a similar
5  search, they are invaluable.
6      I personally knew or worked with some of the individuals
7  that David recruited to his scheme.  I regret that under his
8  influence, their lives were also damaged and their reputations
9  impaired.  Of greatest significance to me and to Korn/Ferry is
10 that at no time over these years did I ever hear David
11 acknowledge the damage that he caused here or accept any
12 personal responsibility for it.  I'm not aware of any instance
13 where he expressed any regret or any remorse for the harm that
14 he did to so many individuals and to our company through his
15 acts.
16     All of us at Korn/Ferry look at this matter as a sorry
17 episode in our company's history.  As individuals, we have
18 paid a price.  We regret that David still has found no way
19 around his denial of the truth and no way around his false
20 accusations.  Instead, his continuing effort has been to do
21 everything in his power to avoid the responsibility for these
22 negative events, responsibility that belongs to him and him
23 alone.
24     Thank you.
25     **THE COURT:**  Thank you, Miss Briski.  I appreciate it.