# EXHIBIT 2

EXHIBIT 2

```
                                          Pages 1 - 17

             UNITED STATES DISTRICT COURT

           NORTHERN DISTRICT OF CALIFORNIA

        BEFORE THE HONORABLE EDWARD M. CHEN

UNITED STATES OF AMERICA,       )
                                )
           Plaintiff,           )
                                )
  vs.                           ) NO. CR 08-0237 EMC
                                )
DAVID NOSAL,                    )
                                ) San Francisco, California
           Defendant.           ) Wednesday
                                ) February 12, 2014
_____) 2:00 p.m.
```

### TRANSCRIPT OF PROCEEDINGS

**APPEARANCES:**

**For Plaintiff:**      MELINDA HAAG
                        United States Attorney
                        450 Golden Gate Ave.
                        San Francisco, California  94102
                **BY:   KYLE WALDINGER, AUSA
                        MATTHEW PARRELLA, AUSA**


**For Defendant:**      RIORDAN & HORGAN
                        523 Octavia Street
                        San Francisco, California 94102
                **BY:   DENNIS RIORDAN, ESQ.**




Reported By:    Debra L. Pas, CSR 11916, CRR, RMR, RPR
                Official Reporter - US District Court
                Computerized Transcription By Eclipse

```
 1                    P R O C E E D I N G S
 2    FEBRUARY 12, 2012                                  3:35 p.m.
 3              (Defendant present, out of custody.)
 4            THE CLERK:  Calling CR08-0237, United States of
 5    America versus David Nosal.
 6            MR. WALDINGER:  Good afternoon, your Honor.  Kyle
 7    Waldinger and Matt Parrella for the United States.
 8            MR. RIORDAN:  Good afternoon, your Honor.  Dennis
 9    Riordan with David Nosal, who is present in court this
10    afternoon.
11            THE COURT:  Good afternoon.  We are here to address
12    the restitution aspect of this case, and so let me start by
13    telling you my view of the law; and that is, I think it is
14    clear that under the Mandatory Victim's Restitution Act, which
15    is found at 18 USC Section 3653(a) that is different from the
16    VWPA because it does include the recovery of certain expenses
17    that are incurred in connection with participation in the
18    investigation and prosecution of this case.  So it is possible
19    for the restitution amount to exceed the loss calculation under
20    the guidelines.
21            I understand the earlier cases and other cases, but my
22    reading of the statutes is that with that component, which we
23    specifically excluded from the loss calculation, is required to
24    be included here.  And, of course, as we know, that is a major
25    component here because there was a lot of -- there's a lot in
```

1  outside fees.  There is a fair amount of additional employee
2  time that is allegedly -- that has allegedly been incurred in
3  connection with the investigation and the prosecution.
4      And although the defense makes the argument that if you
5  look at the legislative history, the NVRA and some of the
6  language of the statute it seems to be directed at people, not
7  corporations, and expenses like travel and child care and not
8  attorney's fees.  I think the Ninth Circuit, certainly in the
9  *Gordon* case, has made it clear that attorney's fees incurred by
10 a corporation in aid of proceedings are recoverable.  And so
11 whatever you think of the legislative history, I think the
12 Ninth Circuit has made the law very clear, at least for now in
13 this circuit.
14     So, to me, that leaves the factual question is:  What
15 costs were proximately caused or related to the offense?  They
16 have to be reasonable.  I don't think anybody disagrees with
17 that.  The degree of necessariness or necessity, that's -- that
18 one may be a little bit trickier.
19     I understand the defense argument that it needs to be
20 necessarily involved or incurred.  I'm not sure if the case law
21 states that clearly, but there does have to be a causal
22 relationship.  And I think the defense has pointed out a number
23 of things where it seems that the causal chain is way out
24 there, such as time spent on the interlocutory appeal and other
25 matters where at some point it seems like it's beyond really

1  helping the government prepare for the case and present the
2  case, that the role that a victim would then normally incur.
3       On the other hand, when I look at the time sheets -- or at
4  least my cursory view of them -- is that there has been a
5  substantial amount of redaction. I don't know what was behind
6  the redacted amount, but what was left, they do on their
7  face -- most of them do appear to be connected with the
8  prosecution or the investigation, such as preparing testimony
9  for the Grand Jury, meeting with various agents of the
10 government, going over various things, going over charts. Now,
11 there are various conference preparing for interviews.
12      But in terms of subject matter, a lot of this does seem to
13 me to fall within the *Gordon* parameters, not that dissimilar to
14 what *Cisco* did.
15      Now, one could also argue, though, that there seems to be
16 some duplication of time. There is a lot of attorney time,
17 conferences, number of attorneys involved. And one could go
18 through kind of a billing analysis and say this is pretty
19 inefficient and there needs to be some adjustment, billing
20 adjustment, if you will.
21      But I will say, at least in the first instance, the record
22 does strike me as being supportive of a restitutionary claim,
23 subject to some of the points that were brought out by the
24 defense in terms of things that seemed to get far afield and a
25 questionable necessity or reasonableness.

1     I didn't see any more sort of overall attack other than
2  the general sort of legal arguments with respect to the quality
3  and nature of most of the entries.
4     But that's where I'm at.  I have to say, I haven't reached
5  any dollar figure, but looking at it -- and if I have to go
6  through this in a more detailed way to look for duplication and
7  things that seem not proximately causal related, I can do that
8  exercise.  And we can talk about how we best isolate those,
9  whether we go through another round of comments.
10     But, in any event, my view is restitution does lie.  It
11 does lie for internally incurred costs if they were incurred in
12 connection with the participation in investigation or
13 prosecution.
14     The *Gordon* case also establishes that attorney's fees,
15 outside attorney's fees, can also be included within that
16 ambit.  And then it becomes a factual question:  What's
17 reasonable?  What's proximately related?  What's -- I don't
18 know if use the term "reasonably necessary."  I don't know if
19 that's related to the proximate cause kind of analysis.  That
20 seems to me the task, but I want to hear your comments before I
21 embark on figuring out the actual task of going through.
22     But I have looked at it.  But those are my initial
23 impressions.
24         **MR. WALDINGER:**  Thank you, your Honor.
25     I mean, from the government's perspective that's what we

1  wanted to hear.  I realize there may be costs that the Court
2  thinks should be disallowed.
3      The defendant in his briefs attacked the claim for the
4  costs incurred during the time of the government's
5  interlocutory appeal.  The Court referenced that.  Those are
6  easily severable.  Those are entire bills that go through a
7  period of time.  They amount to, by my calculations, $9,400.
8      I don't think the Court should be the entity to go through
9  each line.  If the Court is inclined to think that the bills
10 should be cut down in some way, my suggestion would be to make
11 a ruling on broad areas and say these costs are recoverable.
12 And the government, on Page 15 of its brief filed on
13 January 3rd, came up with some generalized categories.  And I
14 think that the Court could do that, make a ruling and have Korn
15 Ferry submit the line items that correspond to those, to those
16 kinds of activities.
17     I think that the categories that the government set out on
18 Page 15 encompass everything other than the interlocutory
19 appeal, but I actually haven't sat down and made sure that that
20 was the case.
21     I think we're at a point in the litigation where the
22 parties are not going to agree on an amount.  So a lot of times
23 on restitution the Courts send us back after one of these
24 hearings and we come up with a stipulation, but I don't think
25 that's going to happen and Mr. Nosal doesn't need to do that.

1     So I -- my proposal is let's just try to make it -- I
2  think, as your Honor said, Korn Ferry is entitled to
3  restitution.  If the Court wants to cut back what's been
4  claimed, perhaps the best way to do it is to award for
5  particular activities and have Korn Ferry resubmit a claim.
6     At that point I would think that it would be fairly well
7  established and we wouldn't -- the Court could rule on that
8  without much additional work.  So that would be my suggestion.
9  Maybe Mr. Riordan has a different one.
10         **THE COURT:**  Okay.  Mr. Riordan?
11         **MR. RIORDAN:**  Well, my suggestion would be one of two
12 things.  Either based on the Court's comments today, the Court
13 directs the two parties to see if they -- what they can agree
14 on.  The amount of -- I mean, the Court has laid out broad
15 areas that are no longer in dispute and it really -- based on
16 the Court's comments, I think -- I think it will be clear that
17 there are some battles which are no longer to be fought and
18 that we might then be able to come back with -- you know, it
19 might be a fairly significant number of items, but the Court
20 would have the items, have the objections and just go yes, no,
21 yes, no.
22         **THE COURT:**  That would be helpful.  If I could at
23 least know where the areas -- because, hopefully, you can agree
24 on some things, and there would be some areas --
25         **MR. WALDINGER:**  Okay.

1     **THE COURT:** -- that may sort of run into that gray
2  area.
3     **MR. WALDINGER:** I was surprised to hear Mr. Riordan
4  say it, but I think we could probably agree on some areas given
5  the Court's ruling.
6     **MR. RIORDAN:** Sure. We can agree that the
7  interlocutory appeals don't count.
8     (Laughter.)
9     **MR. RIORDAN:** I think that we can and -- but there
10 may be areas in which the defense says we agree that there is
11 going to be a restitution award in this area and -- but we have
12 a specific objection to the amount and here is what it is, and
13 the Court goes up and down on that.
14    **THE COURT:** That's what I would prefer. If you could
15 somehow tee it up for me and I'll decide. If you can't come to
16 100 percent agreement, then at least we'll focus in. I think
17 that would make this process more efficient than me trying to
18 sort of go through 76 tabs here and --
19    **MR. WALDINGER:** That's not a good use of anybody's
20 time, particularly the Court's time, your Honor.
21    **THE COURT:** Well, let's do that. I mean, I think you
22 catch my drift.
23    I think the defendant is right. I mean, I guess you're
24 preserving whatever rights you have in terms of the overall
25 question about whether *Gordon* was rightly decided, et cetera,

1  et cetera.  But the fees are in the ballpark.  Internal
2  investigation costs are in the ballpark.  Not civil, but I
3  think they have already testified that this -- none of this was
4  devoted to the civil case.
5      But those that have a direct relationship to the
6  investigation with the Grand Jury preparation or getting
7  documents ready for the FBI, those things are directly and
8  proximally related to the prosecution of the investigation, I
9  think is what I intend to include.
10     Again, as you get further out sort of icing on the cake
11 stuff where you, you know, wouldn't think that a victim's
12 participation would be needed.
13     So, I mean, these are largely, I would think, factual
14 kinds of matters, factual investigation, documents, whatever
15 analysis was done.  You know, those kinds of things, it would
16 seem to me, more in the ballpark and that there does seem to be
17 a fair amount of that, at least on its face; meeting with
18 so-and-so to prepare for Grand Jury testimony.
19     So if you could do that and let me know the areas that you
20 agree upon and then whether it's by items or areas or amounts
21 that you disagree, something that you can isolate with some
22 degree of specificity so I can look at it, I will make the
23 shots, call it.  I expect this is all going to be heard by
24 another Court anyway, but at least we'll get the record down
25 and get this out of the way.

1   How much time you to think you need to try to come up with
2   something that I can look at?
3        **MR. WALDINGER:** I need a little tight time, your
4   Honor.  I'm taking some annual leave over the next couple of
5   weeks and I'm going to be gone for work the week after that.
6      So I think, although the law talks about a restitution
7   order within 90 days, I also think that it says once the Court
8   indicates that it is going to give a restitution order, I think
9   it -- the parties have beyond 90 days, or the Court has beyond
10  90 days to finalize that.
11     But that being said, perhaps we can put something to the
12  Court by the end of March.
13       **MR. RIORDAN:** Yes.  And, I mean, I assume that if
14  we're close, then it would make sense to -- you know, for the
15  Court's purposes to have us spend some additional time on it.
16  We can apply for a continuation or --
17       **THE COURT:** As long as I don't run afoul of some
18  statute.
19     Well, why don't we do that?  Let's set a date for
20  submission that you're comfortable with.
21       **MR. WALDINGER:** I would say March 19th would probably
22  give us enough time.  And I'm looking at -- if I could consult
23  with counsel for Korn Ferry?
24         (Discussion held off the record between counsel.)
25       **MR. WALDINGER:** I think we could submit something by

1  March 19th.  I think that would mean me trying to get something
2  to counsel at least the week before.
3       I don't know, maybe you would want more time than that,
4  Mr. Riordan, to look.
5           **MR. RIORDAN:**  Yeah.  I would like -- I, frankly,
6  would like about two weeks after I get your document to look at
7  it and then, you know, we're going to need to probably
8  meet-and-confer.  So I would add two weeks onto whenever you
9  think you're ready and set it for that date with the Court.
10          **MR. WALDINGER:**  Why don't we set it, if the Court is
11 available, on April 2nd, which keeps us within the 90 days.
12 And then I can -- I will shoot --
13          **THE COURT:**  I'm actually out the week of the 2nd.
14     I'm getting a surprised look?  I forgot to tell you,
15 Betty.
16          **MR. WALDINGER:**  March 26th?
17          **THE COURT:**  Why don't we shoot for that?
18          **MR. WALDINGER:**  And I will work with Korn Ferry and
19 my own staff to try to come up with -- as I said, I think broad
20 categories is the best way to approach it.
21          **THE COURT:**  That may be a way to begin discussions
22 with Mr. Riordan, see if you can agree on those categories
23 because then you can discern from these records which fall
24 under it and which might not.
25          **MR. WALDINGER:**  All right.

1      **THE COURT:** All right?

2      **MR. WALDINGER:** Very good.

3      **THE COURT:** So I don't know if I need a hearing per se, unless you want to -- I mean, I think we all know the ground rules. I just need to see what your submissions are and make some submissions.

7      **MR. WALDINGER:** I'm thinking of submitting some type of table to your Honor, perhaps kind of like how we did with exhibits, the exhibit list, and summarizes the objections. And perhaps the parties could write -- if Mr. Riordan has a longer objection, he can memorialize it in a brief, but I think a table summarizing it might be best.

13     But I think it's going to be a living documents. I haven't quite figured out how we are going to put it together.

15     **THE COURT:** I'm amenable to that.

16     Why don't we go ahead and submit that and I'll just get out an order, unless we need a hearing.

18     **MR. RIORDAN:** I would think your Honor could either decide it's prepared to issue an order or if it thinks some -- one or more items merit some further discussion, then call the parties in.

22     **THE COURT:** All right. I'll do that. Otherwise, I will rule on the papers.

24     Betty has reminded me there is a question about payment of the special assessment and fine. Given this bifurcated process

1  that we're involved in, I'm not sure.  Normally that's due
2  immediately upon sentencing, but I don't know where restitution
3  fits since we haven't resolved the restitution aspect.  I guess
4  we need to tell the Clerk's Office what the plan is there.
5          **MR. WALDINGER:**  Typically, a special assessment is
6  payable on the date of sentencing.  And I can't recall what the
7  Court's order was on the fine.  I have the judgment order in
8  front of me.
9          **THE COURT:**  There is a $600 special assessment and
10 $60,000 fine.
11         **MR. RIORDAN:**  The special assessment is what I
12 understand is payable immediately, and we'll take care of that,
13 your Honor.
14     I mean, the fine is a different story.  Usually -- well --
15         **MR. WALDINGER:**  The Court's order was that it was due
16 immediately.  So that was the Court's order on the judgment, on
17 Page 7.
18         **THE COURT:**  I see.  It says:
19      "The defendant is ordered to pay a special
20      assessment in the amount of $600, a fine to be paid
21      after resolution of the 2/12 motion hearing."
22     That one I guess we did defer.  The fine, sounds like we
23 deferred that.
24         **MR. WALDINGER:**  Where was that, your Honor?
25         **THE COURT:**  I'm looking at a minute order here, filed

```
 1  January 8th.
 2          MR. WALDINGER:  I don't recall the Court saying that.
 3  The judgment -- and that may have been a typo in the minute
 4  order because the judgment talks about the determination of
 5  restitution is deferred until 2/12.
 6          THE COURT:  That might be, because I don't remember
 7  discussing that.  I just see it here.
 8      And now there is motion also for release pending bail that
 9  was set, although these been...
10          (Discussion held off the record between government
11          counsel and the probation officer.)
12          PROBATION OFFICER COOK:  Your Honor, I'm sorry.
13  Connie Cook from U.S. probation.
14      Typically -- I'm the one that did the judgment, so
15  typically the fine and restitution are always ordered
16  immediately.  In terms of the fine, if the Court had set a
17  payment schedule, then that would have been included, which we
18  did not do.
19      As Mr. Riordan said, typically the day of sentencing the
20  $600 would be due and then the Court could set payments for the
21  $60,000 fine, whether it be lump sum payments or monthly
22  payments.
23          THE COURT:  And I think we didn't -- we didn't set a
24  schedule for that, right?  Just a lump sum payment?
25          PROBATION OFFICER COOK:  Yeah.  I don't believe we
```

```
 1  did, your Honor.
 2          MR. RIORDAN:  I didn't address it, your Honor.  It
 3  was my impression that the fine and the restitution were to be
 4  discussed today.
 5          THE COURT:  Okay.  Well, whatever the judgment says.
 6  I mean, I think that's what we need to abide by.  Unless there
 7  is some reason why you want to seek relief or a payment
 8  schedule or something.
 9          MR. RIORDAN:  Well, let me hold that for a second,
10  your Honor, because the other issue before you is the release
11  motion.
12          THE COURT:  Yes.
13          MR. WALDINGER:  Submitted, your Honor.
14          THE COURT:  All right.  Well, I rule that Mr. Nosal
15  should remain on release pending appeal.  I don't know if you
16  have a form of order.
17          MR. RIORDAN:  I can prepare one, your Honor.
18          THE COURT:  Yeah.
19          MR. RIORDAN:  Your Honor, the reason I didn't address
20  it is that -- you know, that constitutes a finding that there
21  are substantial issues on appeal and I would ask on the same
22  basis to stay the payment of the fine until the appeal is
23  decided.
24          THE COURT:  All right.  Any reaction to that, Mr.
25  Waldinger?
```

1            **MR. WALDINGER:** I wasn't prepared to discuss that
2     today.  I mean I'll just submit it your Honor.  The Court's
3     order has been for it to be paid immediately.
4            **THE COURT:** Is there any reason why my ruling on the
5     stay of the service of the incarceration part of the sentence,
6     that is granting release upon bail, wouldn't have the same
7     effect with respect to any punitive fine that's part of the
8     judgment?
9            **MR. WALDINGER:** Well, the 3143 talks about release or
10    detention.
11           **PROBATION OFFICER COOK:** Your Honor, the other issue
12    that should be noted is that given the fines and special
13    assessments which are, you know, ordered immediately by the
14    Court which, you know, says in a lump sum payment, interest is
15    accruing.  So it's probably in Mr. Nosal's best interest to --
16    in terms of interest, to make payments, but I know there is
17    more discussion than just that to be considered.  But that is
18    accruing, interest is accruing.
19           **THE COURT:** I'm not sure where there is authority to
20    stay a fine because it wouldn't be in 3143.
21           **MR. WALDINGER:** It's not in 3143.  And I'm just
22    looking.  The fine provision would be later on in the 3,000s.
23           **PROBATION OFFICER:** I think it's 3583.
24           **MR. WALDINGER:** So the fine provisions start at 3571,
25    your Honor, Section 3571.

1           **MR. RIORDAN:**  Let me -- I'll terminate the
2    discussion.  Mr. Nosal is prepared to pay the fine.
3           **THE COURT:**  Okay.  Well, thank you.
4           **MR. RIORDAN:**  Which, it's our understanding that if
5    we are successful, he's entitled to interest on the deposit.
6           **THE COURT:**  I guess it goes back the other way.  That
7    I don't know.  If it's in the law, it's in the law.
8        All right.  Well, so I'm glad we straightened that out.
9    So the special assessment and fine should be paid forthwith.
10          **MR. RIORDAN:**  We'll do it by the end of the week,
11   your Honor.
12          **THE COURT:**  That's fine.  And as I said, I'm granting
13   the release pending appeal.  And so you take your appeal and
14   then I will rule on the restitution issues with or without a
15   hearing once I get your submission.
16          **MR. RIORDAN:**  Thank you, your Honor.
17          **MR. WALDINGER:**  Thank you, your Honor.
18              (Proceedings adjourned.)
19
20
21
22
23
24
25

**CERTIFICATE OF OFFICIAL REPORTER**


I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


*/s/ Debra L. Pas*
_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Friday, April  25, 2014